STATE, EX REL. WM. BERGSHICHER, *v.* EDWARD F. GRACE
*et al.*

(*Jackson.* April Term, 1904.)

1. **INJUNCTIONS.** No injunction against city council where it is
presumed to be unnecessary, when.

In a suit to recover the office of member of the board of supervisors
and *ex officio* member of the legislative council of the city, the
members of the legislative council will not be enjoined from·
hindering the relator in the discharge of the duties of the office
or the enjoyment of its emoluments, where the council had
refused to induct him into office upon the ground that there
was no vacancy in the membership which he had been elected to
fill, for it will be presumed that the members of the council will
not interfere with the relator's enjoyment of the office, after his
legal right thereto has been adjudged by the courts. (*Post, pp.*
11-15.)

Code cited: Secs. 5165-5186 (S.); secs. 4146-4167 (M. & V.); secs.
3409-3430 (T. and S. and 1858).

2. **OFFICES.** Unconditional resignation, effective from date,
properly tendered and accepted, cannot be revoked, when.

Where a member of the board of supervisors and *ex officio* mem-
ber of the legislative council of a city tendered, in writing and
in proper form, to the council in open session, his unconditional
resignation, effective from date, which was unconditionally and
absolutely accepted by the council, the body authorized to re-
ceive and accept the resignation, his term of office was thereby
absolutely terminated, and his withdrawal of the resignation
at the next meeting of the council by its consent·and approval
did not reinstate him, nor entitle him to hold the office for the
remainder of the term. (*Post, pp.* 11-17.)

State, ex rel., v. Grace.

Cases cited and approved: State v. Augustine, 113 Mo., 21; State v. Hauss, 43 Ind., 105; Pace v. People, 50 Ill., 432; Gates v. Delaware County, 12 Iowa, 405; State v. Fitts, 49 Ala., 402; Mimmack v. United States, 97 U. S., 426.

3. **SAME.** Same. Resignations are not affected or held in abeyance by constitutional and statutory provisions for continuance in office until successor is qualified.

The constitutional and statutory provisions that every officer shall hold his office until his successor is elected or appointed and qualified do not apply to cases of resignations to take immediate effect. The object of these provisions was to authorize, not to compel, officers to hold their offices until their sucessors are qualified. (*Post, pp.* 17, 18.)

Constitution construed: Art. 7, sec. 5.

4. **SAME.** Acceptance of another office vacates the one then held.

An officer's acceptance, by qualification and induction, of another office incompatible with one then held by him is, *ipso facto*, a vacation of the office first held. (*Post, pp.* 18, 19.)

Case cited and approved: Calloway v. Sturm, 1 Heis., 765.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.— J. P. YOUNG, Judge.

BELL, TERRY & BELL and Z. N. ESTES, JR., for plaintiff.

W. B. HENDERSON, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The bill in this cause was brought by the attorney-general of the judicial circuit composed of Shelby county in the name of the State, upon the relation of William Bergshicher, against Ed. F. Grace and others, composing the legislative council of the city of Memphis, under the provisions contained in Code, sections 3409-3430 (Shannon's Code, sections 5165-5186), to recover for the relator from Ed. F. Grace the office of member of the board of supervisors and, *ex officio*, the legislative council of Memphis, and to enjoin him from further attempting to exercise the functions and receiving the emoluments of the office, and the other defendants from hindering the relator in the discharge of the duties and enjoyment of the lawful emoluments of said office, to which he claims to have been duly and lawfully elected.

The facts are undisputed, and are these:

Ed. F. Grace was elected at the general election held in January, 1902, for the election of officers for the city of Memphis, a member of the board of supervisors of that city, and, *ex officio*, of its legislative council, for the statutory term of four years. The other defendants

were at the same time elected mayor and other officers of the city, and *ex officio* members of the legislative council, and all qualified and were inducted into office. On February 11, 1903, the defendant Ed. F. Grace presented in writing and read to the council in open session his unconditional resignation, to take immediate effect, elaborately stating as his reasons therefor that his duties to his family and as editor of a journal required his entire time and imperatively demanded this action. The resignation was then duly and formally accepted, and entries made upon the minutes of the council showing its action in the premises, as follows:

"At the conclusion of the reading [of the resignation], every member of the council spoke as with one voice and insisted that the resignation be withdrawn; but Mr. Grace stated that, on account of his affairs, it was imperative that it should be accepted at once.

"Mayor Williams then addressed the council as follows:

" 'I think the best jewels in life are fidelity to trust and loyalty to friends and family. Both of these virtues Councilman Grace possessed in an eminent degree. I have always recognized in him faithful service and conscientious devotion to duty. I feel that we will have lost a brother when he goes from us.'

"Mr. Green thereupon moved, seconded by Mr. Gensberger, that Mr. Grace's resignation be accepted with regret, and same carried unanimously.

"On motion of Mr. La Croix, seconded by Mr. Car-

uthers, the election of a successor to Mr. Grace's place was postponed until the next meeting of the council.

"The council thereupon adjourned, subject to the call of the mayor."

Thus matters stood until the next meeting of the council, held February 27, 1903, when the defendant Grace, having for reasons satisfactory to himself changed his mind, appeared before the council and requested that its action accepting his resignation be reconsidered, which was done, and the resignation rejected, whereupon he took his seat in the council and continued to act as a member of it until this proceeding was instituted. At the general election held on January 7, 1904, for the election of several officers of the city, William Bergshicher, the relator, was a candidate to fill the vacancy claimed to have been created by the resignation of Grace, and, having no opposition, received all the votes that were cast for that office, and a certificate of election was issued to him by the registration commissioners of Shelby county. He qualified as required by law, and appeared at the next meeting of the council, presented his certificate of election, and demanded to be inducted into office, which was refused upon the ground that the resignation of Grace had been withdrawn, that no vacancy existed, and that the election of relator was a nullity. Thereupon this bill was brought.

The defendant Grace, defending by answer, insisted that his resignation, having been withdrawn before a

successor was elected and qualified, did not become ef-
fective, and that he was entitled to hold the office for
the term for which he had been elected.   The other de-
fendants demurred to the bill upon the ground that
there was a misjoinder of parties, and that the facts
charged made no case of relief against them, which de-
murrer was sustained.   The case was then tried upon
the issues made by the answer of Ed. F. Grace, and, the
trial judge being of the opinion that the resignation of
Grace, having been formally accepted by the legislative
council, the authority authorized to accept it and ap-
point his successor, could not afterwards be withdrawn,
was final, and created a vacancy, and that the relator
was entitled to the relief which he sought against the
defendant Grace, he so decreed.

The complainant and defendant Grace have both
appealed from the portions of these decrees against
them, respectively, and the case is now before us upon
all the questions decided by the trial court.

We are of the opinion that there is no error in the
judgment of the circuit court sustaining the demurrer
of J. J. Williams, mayor, and the other members of the
council, other than Ed. F. Grace.

It is to be presumed that, when the courts have ad-
judged that the relator is entitled to the office which
he claims, these officers will no longer interfere with
or hinder him in the discharge of the duties of the office
or the enjoyment of its emoluments, and in advance of
a contrary action upon their part no injunction will be

granted against them. If they should hereafter be guilty of wrong in this respect, the relator has his remedy against them, and his rights will be enforced in a proper proceeding for that purpose.

The judgment of the trial court is therefore in this respect affirmed.

The action of the court decreeing that the resignation of Ed. F. Grace was complete and final, and a vacancy created, and that the relator, having been elected to fill this vacancy and presented his certificate of election, was entitled to the office and should have been permitted to exercise its functions, discharge its duties, and enjoy its emoluments, is also without error.

The statutes under which the taxing district of Memphis was incorporated vests in the legislative council the power to fill all vacancies occurring in the elective offices of the city, the appointees to hold until the next municipal election, when an election will be made for the unexpired or full term, as the case may be. This carries with it the authority to accept the resignation of officers resigning. That of the defendant was in proper form, unconditional, and effective from date. It was made to the proper body, and it was unconditionally and absolutely accepted. This was a final, complete, and irrevocable dissolution of the defendant's official life under his previous election, and he was then by these proceedings immediately divested of all the responsibilities, powers, duties, and emoluments of the office, and a vacancy created. The only

power the council had was to appoint a successor, to hold until the next general election, when it was the duty of the election officers of the county to hold an election for the purpose of electing his successor for the unexpired term.

The resignation could not be withdrawn with the consent of the council, and the council could not rescind its action accepting it. The defendant was out of office, and could not be reinstated, save by appointment or election, as provided by law.

It is unnecessary to determine whether a resignation is complete without acceptance, as that question does not arise; the resignation in this case having been accepted by the proper body in the most solemn and deliberate form, and placed of reecord.

The fact that the defendant continued in office does not aid him. If he is a usurper, his wrongful act cannot be relied upon to show title in him; and it is immaterial whether the action of the council in allowing a withdrawal of the resignation was an appointment until the next election, as no act of his during that time is called in question. Nor is it necessary for us to decide whether a resignation to take effect in the future is subject to withdrawal, although it has been generally so held, because the one under consideration was made to be accepted at once.

Official robes cannot be put off and assumed at the pleasure of individuals or officers. Public interest requires that all possible certainty exist in the election of

officers and the beginning and expiration of their terms, by law or resignation, and forbids that either should be left to the discretion or vacillation of the person holding the office or the officer or body having the appointing power.

These views are supported by principle and authority. Mechem on Public Officers, sections 415 to 417; *State* v. *Augustine,* 113 Mo., 21, 20 S. W., 651, 35 Am. St. Rep., 696; *State* v. *Hauss,* 43 Ind., 105, 13 Am. Rep., 384; *Pace* v. *People,* 50 Ill., 432; *Gates* v. *Delaware County,* 12 Iowa, 405; *State* v. *Fitts,* 49 Ala., 402; *Mimmack* v. *United States,* 97 U. S., 426, 24 L. Ed., 1067.

The constitutional and statutory provisions in Tennessee, providing that every officer shall hold his office until his successor is elected or appointed and qualified, do not apply to cases of this character.

The object of these provisions was to change the common law, by which the official life of all officers elected for a limited time ended upon the expiration of such term, and authorize, not compel, officers to hold their offices until their successors are qualified; and the primary purpose of the constitutional provision was, for obvious reasons, to extend the official life of all officers under the then existing State government until their successors could be elected under the new constitution.

The contention of the defendant to the contrary is in direct conflict with the spirit of our statutes, providing

for the removal of officers upon conviction of crime or misdemeanor in office, and vacation of office by removal from the district or circuit for which they were elected. To hold otherwise would be to allow nonresidents to hold office in this State, and place it in the power of those authorized to fill the vacancies thus created to continue criminals in office by delaying the appointment of their successors.

It is also inconsistent with the well-established rule in this State that the acceptance and qualification of a person to a second office incompatible with one then held by him is, *ipso facto,* a vacation of the first, as was held in the case of *Calloway* v. *Sturm,* 1 Heisk., 765, when Hon. Horace Maynard, then a member of congress, was appointed one of the judges of this court, which course was followed by Hon. Peter Turney, chief justice of this court, when he qualified as governor, having been elected to this office while holding the former, and afterwards appointing Hon. John S. Wilkes to fill the vacancy which his action in accepting the office of governor had created in this court.

If the law was as insisted by the defendant, Judge Maynard could not have qualified as a judge of this court, because his successor as congressman had not been elected and qualified, and he would have been at the time a federal officer; and Governor Turney would not have been authorized to appoint Justice Wilkes as his successor, because there would have been no vacancy. He would have been judge, and not governor;

The election and qualification of Chief Justice Turney to the office of governor, without resigning his judicial office, and the appointment and acceptance of Justice Wilkes as his successor in this court, are notable events in the history of the judiciary of this State, recognized then and now as authorized by our constitution and statutes, and are constructions of the provision of the constitution and the statute here invoked by the highest authority, and proper to be considered by this court in passing upon similar questions. Whatever may be the holding of courts of other jurisdictions upon this question, the rule in this State is as was enforced and followed in these cases, and we are entirely satisfied with its soundness and wisdom.

We are therefore of the opinion that there is no error in this record, and the decree of the trial court is in all things affirmed.