STATE *ex rel. v.* SHUMATE.

*(Nashville,* December Term, 1937.)

Opinion filed Feb. 12, 1938.

452

Edwin F. Hunt, Chas. L. Cornelius, Thos. H. Malone, J. H. Ballew, and Wm. J. Wade, all of Nashville, Dudley Porter, Jr., of Paris, and Robt. L. Forrester, of Watertown, for appellant.

W. O. Hake, of Dickson, J. J. Lynch, of Chattanooga, R. R. Kramer, of Knoxville, Roberts & Roberts, K. T. McConnico, and Jay G. Stephenson, all of Nashville, and Chas. M. Bryan, F. H. Gailor, and William Gerber, all of Memphis, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought on the relation of James B. Ezzell, a resident of Davidson county, under our *quo warranto* statutes, Code, section 9336 *et seq.*, to enjoin defendant, Shumate, from acting as a member of the House of Representatives of the Tennessee General Assembly and to have him ousted from that office. A demurrer was interposed by the defendant, which was overruled by the chancellor, and an appeal granted to this court. The chancellor, however, declined to issue the injunction.

The petition averred that Shumate was duly elected a member of the House of Representatives in the November, 1936, election and was inducted into office and entered upon the discharge of his duties when the Legislature thereafter met. It was averred that on July 5, 1937, defendant, Shumate, was elected county judge of

Claiborne county by the quarterly county court of that county, gave bond, took the oath of office, and entered upon the discharge of the duties of that office.

The petition further avers that by accepting the oath of office as judge of Claiborne county the defendant thereby vacated his seat in the House of Representatives in the Seventieth General Assembly of the State. Notwithstanding his acceptance of the office of county judge, when the Seventieth General Assembly was called by the Governor into extra session in October, 1937, the defendant undertook to resume the seat in the House of Representatives, to vote on pending measures, and otherwise act as a lawful member of that body. It was alleged in the petition that the General Assembly was about to appropriate large sums of money, that the House of Representatives could only act through its authorized members, that, if defendant were permitted to participate in the proceedings of the House of Representatives and to vote for the appropriation of said sums of money, irreparable injury would be done to the relator and other taxpayers of the State.

Defendant, Shumate, demurred to the petition on the ground that the suit was upon its face a suit to have the court determine the qualifications of the defendant as a member of the House of Representatives, which matter by article 2, section 11, of the Constitution was a matter committed solely to the judgment of the House of Representatives.

Defendant exhibited the journal of the House of Representatives with his demurrer and demurred on the further ground that the journal showed the House had adjudicated and determined the issue sought to be raised

by the petition and had decided that defendant was a qualified member of that body.

As heretofore stated the chancellor refused to issue an injunction against defendant from participating in the proceedings of the House of Representatives but the chancellor overruled the demurrer and decreed that the defendant had vacated his seat in the General Assembly by the acceptance of a second lucrative State office. The chancellor permitted an appeal from this ruling, otherwise, acting under the *quo warranto* statute, Code, section 9351, we take it he would have further decreed that ''defendant be excluded from the office or franchise, and that he pay the costs.''

The journal of the House of Representatives for October 20, 1937, showed that the right of Mr. Shumate to occupy a seat in that body was challenged for the reason that he had been elected county judge of Claiborne county and had assumed the duties of that office. A motion was made that the seat of Mr. Shumate and of Mr. Vines, the latter also being charged with the acceptance of an incompatible office, be declared vacant. The motion was submitted and the roll called. The journal discloses that the motion was defeated by a vote of 54 to 29, neither Mr. Shumate nor Mr. Vines voting.

The decree below is without support in a decision from any court of last resort on similar facts. Expressions of this and other courts used in other situations are urged upon us, but these words, lifted out of their context, lack authority here.

The Federal Constitution and the Constitution of every State, so far as we are advised, contains a provision to the effect that each House of the Legislature shall be the judge of the election and qualification of its mem-

bers. Once in this State, and frequently in other States, the courts have been called upon to pass on the election or qualifications of some occupant or claimant of a legislative seat, but the courts have held this to be a matter beyond their jurisdiction.

To use the simple language of the Constitution, we ask how the court can be a judge of the qualification or disqualification of membership in a House of the Legislature, when the Constitution ordains that each House itself shall be the judge of the qualifications of its own members?

The relator urges upon our consideration section 26 of article 2 of the Constitution of Tennessee as follows:

"No Judge of any court of law or equity, Secretary of State, Attorney-General, Register, Clerk of any Court of Record, or person holding any office under the authority of the United States, shall have a seat in the General Assembly, nor shall any person in this State hold more than one lucrative office at the same time: Provided, That no appointment in the militia, or to the office of Justice of the Peace, shall be considered a lucrative office, or operative as a disqualification to a seat in either House of the General Assembly."

To narrow the controversy, we observe that there was no question about the eligibility of Mr. Shumate to a seat in the House of Representatives at the time of his induction into that office. He had not been elected county judge nor does it appear that he then held any other office. It being granted that defendant was lawfully seated in the House of Representatives, the court is now asked to declare that his seat was vacated by his acceptance of the office of county judge. Doubtless we would so hold if the matter were one within our com-.

petency. In *Calloway* v. *Sturm,* 48 Tenn. (1 Heisk.), 764, the court expressed the opinion that Judge Maynard vacated his seat in the federal House of Representatives by the acceptance of an appointment to the bench of this court. In *State ex rel.* v. *Slagle,* 115 Tenn., 336, 337, 89 S. W., 326, the court expressed the opinion that a constable vacated his office by accepting an appointment as deputy sheriff. In *Wallace* v. *Grubb,* 154 Tenn., 655, 289 S. W., 530, the court expressed the opinion that a member of a school board vacated a seat formerly held by him on that board by the acceptance of an appointment to another seat on the board; that he could not hold two places on the board. In *State ex rel.* v. *Brown,* 157 Tenn., 39, 41, 6 S. W. (2d), 560, 561, the court said that "an incumbent of office who accepts another vacates the first," citing *Wallace* v. *Grubb.* This was a passing observation, not a point decided in *State ex rel.* v. *Brown.* That was an ouster suit which the court dismissed because it was held the ouster statute had no application to the situation presented in the bill. *Caldwell* v. *Lyon,* 168 Tenn., 607, 80 S. W. (2d), 80, 100 A. L. R., 1152, involved county offices.

In the foregoing cases the court was dealing with the title of the claimant to the second office, a title upon which the court was empowered to pass. In *Calloway* v. *Sturm,* the court was careful to note that the continued service in the national House of Representatives, after accepting an appointment to this court, "was a matter entirely for the adjudication of Congress."

In *State ex rel.* v. *Brown,* the bill averred that the defendant was undertaking to hold three offices, that of Senator in the General Assembly of the State, election commissioner for Shelby county, and back tax attorney

for Shelby county. That is the only case coming before this court that has involved the effect of the acceptance by a member of the Legislature of an incompatible office. As above stated, the case did not call for a decision on this question and the suit was dismissed because the remedy employed did not lie.

In no case, coming before this court, have we ever been asked to review and set aside an adjudication actually made by a House of the Legislature as to the qualifications of one of its members.

. We may remark that our Constitution contains no provision, as some Constitutions do, that the acceptance of one office *ipso facto* vacates an office previously held.

Such is the view of this court, expressed in the cases above cited, and such also is the prevailing view. See cases collected in 100 A. L. R., p., 1162. This view, however, is not universal. Some courts of high repute hold that a constitutional or statutory provision against the holding of two offices makes the incumbent of one office ineligible for another office and renders void and of no effect any attempted induction into the second office. *Attorney-General* v. *Henry,* 262 Mass., 127, 159 N. E., 539; *Barrett* v. *Medford,* 254 Mass., 384, 150 N. E., 159; *Attorney-General* v. *Marston,* 66 N. H., 485, 22 A., 560, 13 L. R. A., 670; *State* v. *Kearns,* 47 Ohio St., 566, 25 N. E., 1027; *State* v. *Craig,* 69 Ohio St., 236, 69 N. E., 228; *State ex rel. Gettles* v. *Gillen,* 112 Ohio St., 534, 148 N. E., 86; *Saint* v. *Allen,* 169 La., 1046, 126 So. 548.

In passing on the right of Mr. Shumate to be numbered among its members, we must presume that the House of Representatives acted in good faith. If the House of Representatives was of opinion that Mr. Shumate's membership in that body rendered him ineligible

to accept or hold any other office, and rendered his attempted assumption of another office void and of no effect, if such was the opinion of the House, then they properly concluded that Mr. Shumate did not hold another office but continued to hold his seat in the House. But by whatever reasoning the House of Representatives justified its decision, the decision was upon a matter committed to its jurisdiction by the Constitution of the State, and it was a decision which cannot be reviewed by the courts.

This conclusion has been reached by this court and many other courts in similar cases too numerous to be reviewed in detail.

In the case of *McGill* v. *Coffey,* Knoxville, September 16, 1915, one Levine was elected a member of the House of Representatives from Hamilton county. Section 9 of article 2 of the Constitution provides that ''No person shall be a Representative unless he shall be a citizen of the United States, of the age of twenty-one years, and shall have been a citizen of this State for three years, and a resident in the county he represents one year immediately preceding the election.'' A bill was filed in the chancery court at Chattanooga averring that Levine had not been a citizen of Tennessee for three years and seeking an injunction to prevent him qualifying as a member of the House of Representatives. That case reached this court and was disposed of summarily, the court thinking the matter too simple to require a written opinion. The decree of this court recited that the cause was reached on the docket and ''it appearing to the court that this was an election contest belonging solely to the House of Representatives of the General Assembly of Tennessee for solution'' it was

ordered that the suit be dismissed at the cost of the complainant.

Prior to his elevation to the Supreme Court, while a member of the Kansas Supreme Court, Judge BREWER was called on to construe an act of the Legislature conferring power on the district courts of that State to remove persons from office. The act was construed as not being applicable to members of the Legislature or, if necessarily including members of the Legislature, to be unconstitutional. Judge BREWER said:

"The constitution declares, article 2, section 8, that 'Each house shall be judge of the elections, returns, and qualifications of its own members.' This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. The two houses acting conjointly do not decide. Each house acts for its itself, and by itself; and from its decision there is no appeal, not even to the two houses. And this power is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. At any time, and at all times during the term of office, each house is empowered to pass upon the present qualifications of its own members. By section 5 of the same article, acceptance of a federal office vacates a member's seat. He ceases to be qualified, and of this the house is the judge. If it ousts a member on the claim that he has accepted a federal office, no court or other tribunal can reinstate him. If it refuses to oust a member, his seat is beyond judicial challenge. This grant of power is, in its very nature (and so as to any other disqualification), exclusive; and it is necessary to preserve the entire independence of the two houses. Being a power exclu-

sively vested in it, it cannot be granted away or transferred to any other tribunal or officer. It may appoint a committee to examine and report, but the decision must be by the house itself. It, and it alone, can remove. Perhaps also, it might delegate to a judge or other officer outside its own body power to examine and report upon the qualifications of one of its members. But neither it, nor the two houses together, can abridge the power vested in each house separately of a final decision as to the qualifications of one of its members, or transfer that power to any other tribunal or officer.'' *State ex rel. Martin* v. *Gilmore,* 20 Kan., 551, 27 Am. Rep., 189.

In *People ex rel. Drake* v. *Mahaney,* 13 Mich., 481, applying a constitutional provision that each House of the Legislature should judge of the qualifications, elections, and returns of its members, the court held that the Legislature was the final judge of the matter, and that a statute could not be invalidated by a court on the ground that members of the Legislature whose votes were essential to the enactment of the statute were not legally elected. In this case Judge COOLEY said:

''While the constitution has conferred the general judicial power of the State upon the Courts and officers specified, there are certain powers of a judicial nature which, by the same instrument, are expressly conferred upon other bodies or officers; and among them is the power to judge of the qualifications, elections and returns of members of the Legislature. The terms employed clearly show that each house, in deciding, acts in a judicial capacity, and there is no clause in the constitution which empowers this, or any other Court, to review their action. . . .

"It may happen, as suggested in the argument, that with each house, not only deciding for itself questions of fact, but also construing for itself the law, we may sometimes witness the extraordinary spectacle of the two bodies construing and enforcing the law differently, while a third construction is enforced by the Courts upon the public at large. But with this possibility in view, the evils of allowing the Courts a supervisory power over the decisions of the houses upon the admission of members, are so great and so obvious that it is not surprising that the framers of the constitution refrained from conferring the power."

In *Reif* v. *Barrett*, 355 Ill., 104, 188 N. E., 889, 899, the Supreme Court of Illinois held that a statute could not be attacked on the ground that a member of the Legislature whose vote was necessary to the enactment of the statute was ineligible or disqualified where the Constitution provided that each House should be the judge of the election, returns, and qualifications of its members. The court said:

"Even if the House acts arbitrarily and in violation of the fundamental rights of one of its members whose qualifications are challenged, the final decision of the House upon that subject is forever conclusive. When the House exercises the prerogatives so granted it, regardless of whether its decision is right or wrong, the matter is forever placed at rest. No court has the right to review the decision of the House or command it to take action or nonaction upon the qualifications of its own members."

This opinion might be indefinitely extended by quotations of similar language the courts have used in other

cases. The cases are collected in an elaborate note in 107 A. L. R., 205, to which we refer.

■ The basis of the power of the court to declare an act of the Legislature or an act of Congress invalid, as noted by CHIEF JUSTICE MARSHALL in what may be called the parent case of *Marbury* v. *Madison*, 1 Cranch, 137, 177, 2 L. Ed., 60, is "the province and duty of the judicial department to say what the law is." Where the Constitution and the statute conflict, "the court must determine which of these conflicting rules governs the case."

It is not, however, the province and duty of the Judicial Department to say what the qualifications of a member of a House of the Legislature shall be. That duty has been expressly conferred by the Constitution upon each House of the Legislature with respect to its own members.

If the Federal Constitution had contained a clause providing that Congress should be the judge of the constitutionality of its own acts, we take it that no matter what view the Supreme Court took of a particular act that court would not have presumed to declare an act invalid which Congress had adjudged valid. *Marbury* v. *Madison*, would not have been written.

We have just such case before us as the one last supposed. We are asked to assume jurisdiction of a matter, jurisdiction of which has by the Constitution been confided to another tribunal. The court's jurisdiction of the matter is denied by necessary implication. Yielding full assent to the argument made as to the duty of this court to enforce the provisions of our Constitution in all cases within our reach we must nevertheless decline to interfere with the adjudication of the House of

Representatives in a controversy committed solely to the decision of that body. Such action on our part would be usurpation indeed.

Responding to a suggestion made in argument, we find that article 2, section 11, of the Constitution does not limit the authority of either legislative house to pass on the qualifications of its members. We do not see how the court could limit such authority by reason of the nature of the disqualification charged.

In none of the decisions to which our attention has been called has the court undertaken to set at naught the adjudication of the legislative house upon the qualifications of a particular member, when that adjudication was specifically made by a duly constituted body. Plainly, we are without power to review the judgment of the House of Representatives herein. We must regard the question of Mr. Shumate's qualification to participate in the deliberations of the House as a matter *res adjudicata,* even if it were within our jurisdiction.

The decree of the chancellor is reversed, and the suit dismissed.

Cook, Chambliss, and McKinney, JJ., concur.

### DISSENTING OPINION.

Mr. Justice DeHaven delivered the dissenting opinion.

The provision found in section 26, article 2, of the Constitution of Tennessee prohibiting "any person" in this State from holding more than one lucrative office at the same time applies equally to persons holding the office of member of the General Assembly as to all other persons of the State. The provision in question contains no exemption in favor of a member of the General

Assembly, and none can be read into it. This court has uniformly held that the acceptance of a second lucrative office vacates the first. The first holding to this effect was prior to the adoption of the Constitution of 1870. The same provision was contained in the Constitution of 1834, article 2, section 26 and in that of 1796, article 1, section 23. The framers of the Constitution of 1870, with full knowledge of the construction by this court of the provision contained in the Constitution of 1834 prohibiting the holding of more than one lucrative office by the same person at the same time, brought forward the provision into the new Constitution (article 2, section 26), and, having done so, the prior interpretation and judicial construction will be regarded as having the sanction of constitutional recognition. *Jenkins* v. *Ewin*, 55 Tenn. (8 Heisk.), 456, 475; *Wiltse & Pratt* v. *State*, 55 Tenn. (8 Heisk.), 544, 547.

The history of this provision in Tennessee demonstrates that in its origin it had application alone to members of the General Assembly. Chapter 23, Acts of North Carolina for the year 1784, provided in section 2 thereof:

*"Be it therefore enacted by the General Assembly of North Carolina, and it is hereby enacted by the authority of the same,* That from and after the present session of the General Assembly, every person holding a public office of profit, either by stated salary or commissions, shall be and they are hereby declared to be incapable of being elected as members to serve in the General Assembly, or to enjoy seats therein; *and any member of the General Assembly who shall accept any such office shall thereby vacate his seat, any law, usage or custom to the contrary notwithstanding."* (Italics ours.)

The North Carolina act of 1784 was in force in Tennessee at the time of the adoption of the Constitution of 1796, and the framers of the Constitution of 1796 undoubtedly had that act in mind when they wrote into the Constitution article 1, section 23, which is the same as article 2, section 26, of the Constitution of 1870, except that to the clause providing that "no appointment in the militia, or to the office of Justice of the Peace, shall be considered a lucrative office" was added "or operative as a disqualification to a seat in either house of the general assembly."

In view of the history of the provision found in article 2, section 26, prohibiting "any person" in this State from holding more than one lucrative office at the same time, and from the plain meaning of the language employed, there can be no basis for a contention that the prohibition has no application to members of the General Assembly. The exact contrary is true. The intention was to extend the prohibition contained in the North Carolina act, applicable alone to members of the General Assembly, so as to prevent any person from holding more than one lucrative office. Without this constitutional barrier, the General Assembly could easily become an organization of officeholders.

In 1920 the then Governor of this State was confronted with the question of calling an extra session of the General Assembly. There were a number of vacancies in the membership. The question also arose as to whether or not there were additional vacancies because of the fact that members had accepted other offices. The Governor sought the advice of the Attorney-General of the State, who rendered an opinion in which, af-

ter stating the rule laid down in *Calloway* v. *Sturm,* 48 Tenn. (1 Heisk.), 764, and other like cases, he said:

"It is my understanding of the foregoing rule that it is not necessary where one has accepted a second office to have any judicial decision of the vacancy of the first office before it can be filled. The vacancy exists by virtue of the act of acceptance of the second office.

"So in every instance where a member of the legislature has accepted an office, either State or Federal, with a fixed tenure and salary, the fact of the acceptance of the same, vacates his seat in the legislature, under the rule in Tennessee."

The rule of constitutional incompatibility in office has been applied to members of the General Assembly in other states. *People* v. *Haas,* 145 Ill. App., 283; *State ex rel.* v. *Mason et al.,* 61 Ohio St., 513, 56 N. E., 468; *State ex rel. McMillan* v. *Sadler,* 25 Nev., 131, 132, 58 P., 284, 294, 59 P., 546, 63 P., 128, 83 Am. St. Rep., 573, at page 584.

In *Rainey* v. *Taylor,* 166 Ga., 476, 143 S. E., 383, relied upon by defendant, Taylor while holding the office of superintendent of schools was elected a member of the Legislature, and his right to the seat was challenged in the suit. The court held that this was a question to be determined by the House to which he was elected. Under the rule in Tennessee, Taylor's right to the seat could not have arisen because the acceptance of the legislative office would have vacated the office of superintendent of schools.

In *State ex rel.* v. *Grace,* 113 Tenn., 9, 82 S. W., 485, 487, the court, after referring to *Calloway* v. *Sturm,* 48 Tenn. (1 Heisk.), 764, and cases there cited, said:

"Whatever may be the holding of courts of other juris-

dictions upon this question, the rule in this state is as was enforced and followed in these cases, and we are entirely satisfied with its soundness and wisdom.''

The rule, however, that the acceptance of a second lucrative office vacates the first is recognized and followed in many other jurisdictions. 46 C. J., 947; 22 R. C. L., 412; Annotation, 100 A. L. R., 1152; Cooley on Constitutional Limitations, 1352; *Meagher* v. *Howell*, 171 Ky., 238, 188 S. W., 373; *In re Advisory Opinion*, 76 Fla., 418, 79 So., 874.

Defendant insists, however, ''that the House is not required to place upon article 2, section 26, that construction which this court has placed upon it.'' The argument is, in substance, that the House, in passing upon the question of defendant's right to sit as a member, ''is not obligated to adopt the principle of construction that the acceptance of the second office vacated the first.''

It is clear that the General Assembly cannot rightfully exercise a judicial power. *Jones' Heirs* v. *Perry*, 18 Tenn. (10 Yerg.), 59, 30 Am. Dec., 430; *White's Creek Turnpike Co.* v. *Davidson County*, 3 Tenn. Ch., 396; 12 C. J., 813. In 6 Ruling Case Law 160, it is stated:

''The legislature does not inherently possess any judicial power, or any mixed jurisdiction partly legislative and partly judicial. The doctrine as to the separation of the powers of the government into three distinct departments is considered sufficient to prevent the legislature from exercising any judicial function whatsoever, except such as may in terms be allowed to it by the constitution itself.''

Under no provision in our Constitution can it be held that the House was possessed of the judicial power to

construe section 26, article 2 thereof. The claim is, however, that as "judges of the qualifications and elections of its members," under section 11, article 2, the House could construe section 26, article 2. Where a member's right to sit is challenged, as here, on the ground that he had vacated his seat by accepting another office, the House has the jurisdiction to determine the *fact* of whether or not the member has accepted a second lucrative office; but if it finds that a second lucrative office has, in fact, been accepted, the Constitution, by section 26, article 2, determines the results. *This section is mandatory and self-executing.* Defendant admits that he accepted the lucrative office of county judge. The decree, written by the Constitution itself, was that defendant, on the admitted facts, had vacated his seat in the House.

The constitutional provision prohibiting the holding of more than one lucrative office at the same time has nothing whatever to do with the question of the qualifications and election of members of the General Assembly. A person holding a lucrative office, upon accepting membership in either House, vacates the prior office. So, it is evident that holding the prior office could not become a question of qualification. The provision finds application with reference to a member of the General Assembly *after* his qualifications and election have been adjudged and *after* he has been admitted as a member. Then, and then only, he comes under the constitutional mandate that if he accepts a second office he vacates his seat.

The vacation of his office as member of the House was necessary to defendant's accepting the second office;

otherwise he would have violated the constitutional provision prohibiting the holding of two offices.

Unquestionably, the courts are without jurisdiction to determine the question of the qualifications and election of a member of the General Assembly. That jurisdiction belongs exclusively to each House. Appellant has cited numerous cases where courts have declined to take jurisdiction of election contests involving the right to a seat in the General Assembly, or where mandamus was sought to compel the issuance of a certificate of election. These cases are not in point here. No question of the election or qualifications of defendant is involved.

Defendant, upon accepting the second office, was as completely out of the office of member of the House as a stranger who had never held it. He was not again elected a member of the House. He could not put himself back in office. Neither could the House fill the vacancy.

Section 15, article 2, of the Constitution, provides:

"When vacancies happen in either House, the Governor for the time being, shall issue writs of election to fill such vacancies."

The provision is mandatory.

It cannot be doubted that, when defendant accepted the office of county judge, on July 5, 1937, he, *on that date,* automatically ceased to be a member of the General Assembly under constitutional mandate. When defendant accepted the second office no judicial proceedings of any kind were required to terminate his tenure of the first office. *State* v. *Grace,* 113 Tenn., 9, 82 S. W., 485; *State* v. *Slagle,* 115 Tenn., 336, 337, 89 S. W., 326. In 46 Corpus Juris 974, it is stated:

"A vacancy in office for any of the causes enumerated

in the constitution or a statute is usually regarded as occurring at the time of the happening of the event which is the cause of the vacancy, and no judicial determination that the vacancy has occurred is necessary."

Cases from many jurisdictions are cited in the footnote in support of the above text.

The chancellor held that defendant had vacated his seat in the House. It was from this holding that defendant appealed. The bill, however, prays that the writ in the nature of a *quo warranto* be directed against defendant. I do not think this writ can be used to exclude even an intruder from the House. The General Assembly must be left to act as it sees fit, at all times, without any sort of interference by the courts; but the validity of legislation may be inquired into by the courts.