Jack COMER

v.

Victor H. ASHE et al.

Supreme Court of Tennessee.

Oct. 10, 1974.

Norman L. Griffin, Knoxville, for appellant.

Jack B. Draper, Charles A. Maner, Jr., Knoxville, for appellees.

### OPINION

PER CURIAM.

This is a suit for a declaratory judgment and injunctive relief, involving the right of a candidate for the State Senate to have his name placed upon the ballot in the forthcoming general election of November 5, 1974.

Two principal questions are presented, viz:

a. Does this Court have jurisdiction, under the Constitution of Tennessee, to de-

termine the eligibility of a candidate for the State Senate or is this determination the exclusive province of the Senate?

b. Does the plaintiff have the standing to maintain this action.

Since this case is before the Court by virtue of the action of the trial judge in sustaining a motion to dismiss, we take the fact situation from the complaint, the briefs of counsel and oral arguments made at the Bar of the Court.

On August 29, 1974, plaintiff, Jack Comer, a citizen and resident of Knox County, Tennessee and a duly qualified Independent Candidate for the office of State Senator, from the Seventh Senatorial District, filed his complaint in the Chancery Court at Knoxville against Victor H. Ashe, the duly qualified nominee of the Republican Party and Mrs. Gene (Betty) Cathey, the duly qualified nominee of the Democratic Party, in the same election. The Knox County Election Commission is named as a party defendant.

The complaint recites that Victor H. Ashe has not attained the age of thirty (30) years and will not do so until January 1, 1975.

The prayer is for a declaratory judgment as to whether Ashe's name should be placed upon the ballot and, assuming a declaration of ineligibility, for the issuance of an injunction restraining the Election Commission from placing his name on the ballot.

The defendant, Cathey, filed no answer or other pleading and has not participated in this appeal.

The defendant, Ashe, moved to dismiss on four (4) grounds which may be summarized as follows:

1. That jurisdiction to hear and determine questions involving the qualifications and election of members of the Senate is vested exclusively in that body under Article 2, Sec. 11 of the Constitution of Tennessee.

2. The Court lacks jurisdiction since the question is purely political.

3. The complaint fails to state a claim upon which relief can be granted since the suit is based upon the contingency of Ashe's election and, therefore, is premature.

4. Plaintiff's action is in reality an election contest, under TCA Section 2–1704, and plaintiff is without standing to maintain the same.

The Knox County Election Commission moved to dismiss on the basis of the jurisdiction of the Court asserting that the suit (1) seeks review of a decision by a Board or Commission acting as a governmental agency and (2) presents a question of a purely political nature.

The Chancellor sustained grounds 1 and 4 of the motion of Victor Ashe and dismissed as to all remaining grounds.

Plaintiff prayed an appeal only to the extent of the Ashe motion, with the result that the Election Commission and Cathey are no longer parties to the suit.

His appeal was perfected on September 24, 1974 and the transcript was filed in this Court on September 26, 1974. Because this is a case "wherein the general public welfare demands a speedy hearing," we granted a motion to expedite this cause and heard argument on October 3, 1974.

We have had the benefit of excellent and exhaustive briefs and of able, ingenious and thought-provoking argument.

We have given this case our most thorough collective attention and consideration since we deal with the relationship between the judiciary and a coordinate branch of the State Government.

The question of transcendent importance is whether consideration and determination of this case would violate the doctrine of a "separation of powers" which is so firmly etched into our State Constitution.

We have approached this case with the firm resolution that we would neither encroach upon the Constitutional prerogatives of the Legislature nor abdicate our own responsibility.

We have read all authorities cited in the respective briefs and have made a further and independent investigation of our own.

Art. 2, Sec. 10 of the Constitution of the State of Tennessee provides:

"No person shall be a Senator unless he shall be a citizen of the United States, *of the age of thirty years,* and shall have resided three years in this State, and one year in the county or district, *immediately preceding the election.*" (Emphasis supplied).

Appellant insists that the phrase "immediately preceding the election" should be related back to the age requirement. Perhaps the comma at the end of the word "years" should have been a semi-colon but, regardless of the punctuation mark, a fair reading of this entire section leads us to the conclusion that this phrase relates only to the residential requirements.

█ The thrust of this section, when considered in the light of Art. 2, Sec. 3, *infra* is to require that a State Senator must have attained age 30 by the date of the commencement of his term, which is the day of the election.

Art. 2, Sec. 11, reads, in part, as follows:

"The Senate and House of Representatives, *when assembled,* shall each choose a speaker and its other officers; be judges of the qualifications and election of its members, and sit upon its own adjournments from day to day." (Emphasis supplied).

The remainder of this Article relates to the constitution of a quorum.

This Article shows on its face that it is operative only when the General Assembly is in session.

We parenthetically note the Senate to which Mr. Ashe seeks election is not now in existence; does not come into existence until November 5, 1974 and can only convene thereafter in the manner prescribed by the Constitution. If the courts do not have jurisdiction to determine this controversy the result is that Tennessee has no procedure to keep an ineligible candidate's name from appearing on the ballot.

Our investigation discloses that virtually all state constitutions contain substantially the same provisions, in this regard.

Art. 2, Sec. 3 fixes the term of office of a State Senator at "four years from the day of the general election."

Art. 2, Sec. 23 fixes the compensation of a State Senator at "$1800.00 [1] per year payable in equal monthly installments from the date of his election", but allows the compensation to be reduced or increased by the General Assembly.

With this Tennessee Constitutional predicate in mind, we now proceed to discuss the cases relied upon by the appellant to sustain the proposition that this Court has jurisdiction to determine this controversy.

At the outset we should observe that there is no clear, definitive or controlling Tennessee precedent. We reserve our primary discussion of Tennessee case law until the decisions of other jurisdictions have been examined.

Appellant relies upon People ex rel. Sherwood v. Board of Canvassers, 129 N. Y. 360, 29 N.E. 345 (1891).

The relator, Franklin D. Sherwood, sought writ of mandamus to compel the Board of State Canvassers to issue him a certificate of election as a State Senator.

Counsel, in their respective briefs, differ as to the holding of this case.

---

1. This compensation has been increased. See Sec. 3–115, T.C.A.

In our view it does not support the view of either since the aid of the Court was invoked after the election had been held.

If the instant suit had been instituted after the election, we would have no hesitance in declining to accept jurisdiction on the basis of the exclusivity of the Senate's jurisdiction.

Appellant further relies upon State ex rel. Beck v. Erickson, 175 Minn. 393, 221 N.W. 245 (1928). In this case, a duly certified nominee was challenged on the basis of residential requirements. The Supreme Court of Minnesota, in a brief per curiam opinion, held the candidate to be ineligible and ordered that his name not be placed upon the ballot.

Counsel for Ashe insists that this case was overruled by State ex rel. McGrath v. Erickson, 203 Minn. 390, 281 N.W. 366 (1938).

We have examined this case and, as a result, agree that *McGrath* is, at least, a later and seemingly inconsistent, pronouncement.

McGrath had been a candidate in a primary election; held a proper certificate of election and an effort was being made to prevent his name from appearing on the official, November election ballot. In disposing of the controversy, the Court said:

"[I]t may be conceded that in respect to primary election ballots courts, in virtue of § 316 of the statutes, may strike the name of a candidate from the ballots who is not a resident of the legislative election district wherein he has filed; but when it comes to inquire concerning the eligibility of one who has obtained a proper certificate of nomination at a primary election for a state senator, we think the courts must yield the determination thereof to the senate of the state upon receiving the votes cast in his favor at the general election."

While we cannot assent to apply this reasoning to the present case, it does support the insistence of the appellee.

Appellant cites us to the case of State ex rel. Cloud v. Election Board, 169 Okl. 363, 36 P.2d 20 (1934).

This was a mandamus suit seeking to compel the State Election Board to issue to relator a certificate of nomination for the office of Representative in the Oklahoma Legislature.

His claim of right was founded upon the ineligibility of the apparent nominee, by virtue of conviction of a felony and his resulting disqualification under the Constitution of Oklahoma.

The Oklahoma Constitution provides that "[e]ach House shall be the judge of the elections, returns, and qualifications of its own members . . . . " It was contended that sole jurisdiction was in the House of Representatives and that the Court was without jurisdiction.

In disposing of this case the Court said, *inter alia*:

"A determination of the eligibility of a candidate for such office requires a construction and interpretation of various constitutional provisions. It devolves upon the courts to interpret and construe existing provisions of law. The Constitution provides for the time of legislative sessions, and it must have been contemplated that the Legislature would not be in session at such time as the eligibility or ineligibility of a candidate for such office was in question. We are not here passing upon the election or qualifications of a member of the House of Representatives and are not concerned with the canvassing of returns. A plain and simple construction of section 30, art. 5, forces us to the conclusion that said section has, and can have, no field of operation until after election. We find nothing in the Constitution which precludes this court from passing upon the principal issue involved herein, which is whether or not a full and unconditional pardon, granted by the Chief Executive of the state, suffices to remove the ineli-

gibility provided in section 18, art. 5, supra."

We cannot agree with appellee's insistence that *Cloud* was treated as an election contest nor do we agree that subsequent decisions of the Supreme Court of the United States establishing the proposition that primary elections are an integral part of the electoral process would, or should, have any bearing upon, or dilute the significance of *Cloud,* or should in any way affect the decision of the instant case. Given the vitality of primary elections, they continue to be state sanctioned preliminary election contests with participation limited—or intended so to be—to members of the respective political parties, whereas, the general election is the ultimate selection process.

Appellant further relies upon State ex rel. O'Connell v. Dubuque, 68 Wash.2d 553, 413 P.2d 972 (1966).

The Washington State Legislature, in 1965 adopted legislation increasing the salary of its members effective with the ensuing terms. A question arose as to the eligibility of the members to run for re-election under the state constitution. The State Attorney General brought an action for a declaratory judgment.

The Washington Constitution makes each house the "judge of the election, returns and qualifications of its own members."

It was contended that this section makes the House of Representatives the exclusive judges and totally deprives the courts of jurisdiction to inquire into and pass judgment upon the eligibility of a candidate, nominee or elected member.

The Court, after reviewing authorities, held that this constitutional provision "does not divest the courts of jurisdiction to hear and decide questions respecting the election, returns and qualifications of candidates at the primary election."

The opinion cites and quotes from State ex rel. Boze v. Superior Court, 15 Wash.2d 147, 129 P.2d 776 (1942) wherein the Court, in a case brought to challenge the qualifications of a nominee, held against the relator saying:

"(B)ecause relator had not brought his case in time to resolve the issues well in advance of the primary, no relief should be granted."

The appellee correctly contends that *Boze* is supportive of his insistence.

Next we are cited to Daley v. Morial, La.App., 205 So.2d 213 (1967).

Appellee contends that this case was "simply an election contest" and has no real application to the case at bar.

In a broad, generic sense this case might be called an "election contest" but not in the specific and conventional sense. However, its classification as an "election contest" is of no significance.

It was a suit challenging the qualifications of a party nominee to run in the general election upon the ground that he did not meet the residential requirement. As such, it is precisely in point.

The Constitution of Louisiana provides, in part:

"Each house shall be the judge of the qualifications, election and returns of its own members."

The Court said:

"Obviously this article applies only to those who have been *elected* as members of the Legislature and not to one who is only a political party *nominee.*"

The Court further made this significant observation:

"A contest for nomination under Act 97 of 1922, known as the Primary Law, arising between contestants for nomination for election to the State Legislature, is in no sense an election contest within the purview of Article III, Sec. 10 of the Constitution of Louisiana, which provides that each house of the State

Legislature shall be the judge of the qualifications and election and returns of its own members."

Lastly, among the cases cited from other jurisdictions is Hayes v. Gill, 52 Hawaii 251, 473 P.2d 872 (1970).

Petitioner sought a declaration as to her eligibility to participate, as a candidate, in a primary election for membership in the Hawaii House of Representatives. The first regular session of the House would convene on January 20, 1971 and petitioner would complete her residence requirement on January 10, 1971. To put the matter in precise perspective, she would not be qualified on the date of the primary or general elections, but would be qualified ten days in advance of the convention of the session to which she sought election.

The significance of this opinion is somewhat diluted by the fact that Hawaii has a statute (HRS 12–3(6) proscribing the printing of the name of any candidate on a primary election ballot unless the candidate files a certificate that he or she will "qualify under the law for the office he is seeking by the date of the next election." The Hawaii Court construes the term "next election" to mean the ensuing general election.

■ We digress to point out that Tennessee has no statute precisely prohibiting the candidacy of an ineligible or disqualified candidate, however, implicit in our law is the right of the courts to make such determination on a case by case basis and under appropriate circumstances.

The Hawaii Constitution provides that "[e]ach house shall be the judge of the elections, returns and qualifications of its own members."

The Court held that petitioner's contention that the applicable statute violated the State Constitution in abridging the power of each house to judge the qualification of its members, "has cogency if the powers of

a legislative body to judge includes the power to construe the language of the constitutional provision pertinent to the question of qualification."

The Court then cites Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and construes the opinion as containing a clear indication that the Supreme Court of the United States would rule that the power of each house to judge the qualifications of its members does not include the power to construe the constitutional provision on qualifications contrary to the construction of the Court.

Based on *Powell* the Court holds that the power of each house to judge the qualifications of its members does not include the power to construe the constitutional provision on qualifications contrary to the construction of the Court.

Pertinent to the considerations involved in the instant case, is the following language:

"In support of her argument, petitioner relies on the words 'eligible to serve', as used in article III, section 7. Her point is that, if she is elected, normally she will not be required to serve until the convening of the first regular session, and that, by the time the first regular session is convened, she will have completed her three years' residence in the State and will be eligible to serve. Petitioner's argument ignores the possibility that there may be an emergency which requires the calling of a special session between the date of the general election and the convening of the first regular session and the importance of the availability of all legislators for service in case such special session is convened. It may well be that the emergency which requires the convening of such special session will involve a situation where the need of the constituents to be effectively represented is the greatest.

Article III, section 5, provides:

'The term of office of members of the house of representatives shall be two years beginning with their election and ending on the day of the next general election, and the term of office of members of the senate shall be four years beginning with their election and ending on the day of the second general election after their election.' We think that implicit in that provision is the requirement that a legislator be available for service at all times during his elected term, in regular sessions as well as in special sessions." (Page 876 of 473 P.2d 876).

We now note the cases from other jurisdictions cited by the appellee.

The case of Allen v. Lelande, 164 Cal. 56, 127 P. 643 (1912) was a mandamus action seeking to have the name of a party nominee removed from the ballot on the basis of his failure to meet residential requirements. In declining to grant relief the Court said:

"The Constitution of the state (article 4, § 7) reads as follows:

'Each house shall choose its officers, and judge of the qualifications, elections, and returns of its members.'

By that article the assembly is made the exclusive judge of the qualifications of its members. The law providing for an official ballot cannot be held to have changed the intent of the people in adopting that constitutional provision that the assembly should be the sole and exclusive judge of the eligibility of those whose election is properly certified. For this court to undertake to try the question of eligibility and to deprive the candidate of any chance to be elected would simply be to usurp the jurisdiction of the assembly."

Appellee relies heavily upon State ex rel. Wettengel v. Zimmerman, 249 Wis. 237, 24 N.W.2d 504 (1946).

The facts of that case are of interest. The late Senator Joseph R. McCarthy, then a Circuit Judge, with approximately five and one-half years remaining on his term, entered the 1946 Republican Primary in Wisconsin against Senator Robert M. LaFollette, Jr., and one Perry J. Stearns, and emerged victorious.

The Constitution of Wisconsin provides that judges shall hold no office of trust during the term for which they are elected. The contention was made that his nomination was void as being in violation of this constitutional provision.

The court determined the controversy under federal law and dismissed the suit holding that neither by constitutional provision nor legislative enactment could the State of Wisconsin prescribe qualifications of a candidate for nomination for the office of United States Senator.

In the view we take of this matter this case does not support appellee's contention. We deal here with a substantially different fact situation and one wholly involving the Constitution and laws of the State of Tennessee.

Senator McCarthy did not run afoul of the Constitution of Wisconsin unless and until he presented himself at the Bar of the United States Senate and, at that time, under all authorities the Senate would have been the sole judge of his qualifications.

Our own case of Kelly v. Woodlee, 175 Tenn. 181, 133 S.W.2d 473, 135 S.W.2d 649 (1939) is analagous.

Former United States Senator, Tom Stewart, while serving as District Attorney General of the Eighteenth Judicial Circuit was elected to the United States Senate in November 1938. The Senate was not then in session and did not convene until the following January. Senator Stewart presented himself at the Bar of the Senate and was inducted on January 16, 1939. Thereupon, he presented his resignation as

Attorney General to the Governor, who, in turn, appointed and commissioned the late Chancellor Glenn W. Woodlee, to succeed him.

In the meantime, the outgoing governor, on January 13, 1939, appointed Tom C. Kelly to the office of Attorney General.

The ensuing contest presented the single issue of the date of the vacancy, i. e. the date of the election vis a vis the date of Senator Stewart's induction.

Our Supreme Court held that there was no automatic forfeiture; that no vacancy existed until Senator Stewart, the incumbent, was received into the Senate, sworn and entered upon his duties on January 16, 1939.

Appellee next relies upon Markwort v. McGee, 36 Cal.2d 592, 226 P.2d 1 (1951).

This was a dispute between two candidates for nomination for the office of member of the State Assembly of California. Plaintiff contended that his adversary did not meet the residential requirements.

Affirming Allen v. Lelande, supra, and placing great reliance on State ex rel. Wettengel v. Zimmerman, supra, the California Supreme Court held that the jurisdiction to judge the qualifications and elections of assemblymen lies exclusively with the Assembly and this is a non-delegable jurisdiction.

We have discussed rather fully the cases from other jurisdictions relied upon by the parties, feeling that it was proper to do so. Additionally, we have made an independent investigation into the applicable law.

We find only one case which we consider to be of sufficient significance to notice in this opinion.

This is the case of State ex rel. Gralike v. Walsh, 483 S.W.2d 70 (Mo.1972).

This was a suit seeking to prohibit election boards from placing the name of a candidate on the primary election ballot for the democratic nomination for State Senator, on the basis of his failure to meet residential requirements.

The contention was made that the Court was without jurisdiction to determine the qualifications of a candidate for the State Legislature for the reason that the exclusive right of determining such qualifications is reserved to the Legislature under the Missouri Constitution, which is essentially the same as that of Tennessee in this respect.

After noting two Missouri cases dealing with the ouster of sitting members of the Missouri House, wherein the Court held that the legislative body was the exclusive forum, the Court said:

"In the case now presented, we deal with a different situation. . . . (The relator) is not presenting himself at this time as the duly elected Senator from that District. He seeks only the opportunity to be a candidate for the nomination."

After quoting from the Missouri Constitution, the Court, speaking through its Chief Justice, said:

"Such language, in our view, is not broad enough to prevent the determination by the courts of whether one who seeks to be a candidate at a Primary Election possesses the requisite qualifications."

In response to the insistence that the entire election process of members of the General Assembly, directs itself to the Legislature and that the courts have no jurisdiction in this area, the Chief Justice states:

"This interpretation of the constitutional provision would mean that a 15-year-old resident of Illinois could file a declaration of candidacy for State Senator in Missouri, and even though the facts were undisputed, the courts could do nothing to prevent his name from appearing on the ballot."

Again the Court says:

"We do not accept respondents' interpretation of the scope of Article III, § 18. In our view, it applies when a General Election has been held and one then presents himself for membership, and, of course, it also applies in instances after the person has been seated and question as to his qualifications and right to remain a member arises."

We adopt the reasoning of the Missouri Court.

Lastly, we consider Tennessee cases bearing upon the question under consideration.

Appellant's brief cites us to the unreported case of McGill v. Coffey, decided by this Court in 1914.

The Minutes of this Court (Minutes 1914, page 363) indicate that on December 18, 1914, the Court granted supersedeas to forbid complainant McGill from the further prosecution of a suit in the Chancery Court of Hamilton County on the ground that "there is presented on this record an election contest which belongs solely to the House of Representatives of the General Assembly for solution."

Thereafter, the Minutes (Minutes 1915, p. 393) reflect that the suit was dismissed on September 16, 1915, "it appearing to the Court that this was an election contest belonging solely to the House of Representatives . . . . "

We infer that this suit was commenced after the general election and that Mr. Coffey was, therefore, a member of the House at the time of its institution and pendency. Under these circumstances this decision has no relevance.

Gates v. Long, 172 Tenn. 471, 113 S.W. 2d 388 (1938) is cited without comment in appellant's brief.

This case which sustained the "Unit Primary Bill", after elision, is only pertinent to the extent of its holding that a decision of the House of Representatives that members whose eligibility was challenged, remained de jure members, was conclusive of their rights to participate in the deliberations of that body. Both parties cite State ex rel. v. Shumate, 172 Tenn. 451, 113 S. W.2d 381 (1938).

The Court was presented with a controversy stemming from the fact that a member of the House of Representatives, A. G. Shumate, later Chancellor of the Second Chancery Division, had been elected to the office of County Judge of Claiborne County and had been inducted into office and had entered upon the discharge of his official duties as County Judge—all in violation of Article 2, Section 26 of the Constitution of Tennessee.

The crux of the Court's holding in declining to declare Representative Shumate's seat vacant is set forth in the following sentence:

"But by whatever reasoning the House of Representatives justified its decision, the decision was upon a matter committed to its jurisdiction by the Constitution of the State, and it was a decision which cannot be reviewed by the courts."

In our independent research we find that in 1954 Richard Fulton, of Davidson County, who was 27 years of age, was nominated to run for the State Senate in the forthcoming general election, in place of his brother, Lyle Fulton, who received the nomination of the Democratic Party, but died before the General Election.

Suit was instituted in the Chancery Court at Nashville in the cause of State ex rel. Sanborn v. Richard Fulton et al., challenging the right of Mr. Fulton to have his name placed upon the general election ballot. The Chancellor ordered his name removed and Mr. Fulton applied to chief Justice A. B. Neil for writs of certiorari and supersedeas.

In granting the writs, the Chief Justice said, in part:

"This is in effect an election contest. The Supreme Court has repeatedly held

that the courts will not enjoin the holding of an election. The holding rests upon the fact that the parties have the unquestioned right to contest the election in a forum expressly provided to hear it.

'Conceding that Mr. Fulton is not constitutionally qualified he commits no public wrong by offering himself as a candidate. He may not be elected. He may not be seated by the Senate if he is elected.

'Now this proceeding presupposes (1) that Fulton will be elected; (2) that the Senators, acting under their oath to support the constitution, will decide a contest in his favor.

'The courts have never issued an injunction to prevent a wrong which may never happen. We have no right to issue an extraordinary writ based upon a mere hypothesis.

'It is settled law in all jurisdictions that the judiciary shall not interfere with the other two departments of government, i. e. the Legislative and Executive. Under the constitution the Senate is "the exclusive judge of the qualifications of its members". In the light of this provision no other tribunal is authorized to decide the question. The question of whether any elected Senator should be seated is strictly a prerogative of the legislative branch of the State Government. I cannot assume otherwise than that the Senators will decide the question under their oath to support the constitution the same as every court in this State.

'We are requested to issue this writ upon the hypothesis that the members of the Senate will not observe their oath of office.' "

Thereafter, McGill v. Coffey, *supra*, is cited with approval, as are cases from Georgia and Kansas.

Thereafter, the memorandum recites:

"But it is argued by counsel for relator Sanborn that the proceeding is for a decree that Fulton is not eligible to hold office, and that his name should not be on the ballot because his election would be void. This is the very issue that the constitution has expressly said is an issue that is committed to the Senate alone. It is the sole prerogative of the legislative department of the government, and it is the only tribunal authorized to decide it. The judiciary is not the keeper of the conscience of the Senate or any of its individual members."

Mr. Fulton's name remained on the ballot.[1]

It will be borne in mind that this is not a decision of the Supreme Court, only a memorandum granting certiorari by a single member of the Court, albeit a most respected one; however, we stand unanimous in the conviction that this opinion is not supported by any significant authority.

We are acutely aware that Victor Ashe will be 30 years of age (according to the pleadings) on January 1, 1975 which is well in advance of the regular convention date of the next General Assembly but this does not alter the fact that he will be ineligible on the day of the election and the day of the commencement of the term.

We recognize that he could forfeit his pay for some two months and, in the event of a special session, could decline to

---

1. Mr. Fulton's name appeared on the ballot and he was elected by a majority of almost 7 to 1. When he presented himself at the Bar of the Senate for induction, that body declined to seat him by a vote of 28 to 0, with Mr. Fulton and one other abstaining. (See Senate Journal 1955, p. 38). Mr. Fulton was elected to the State Senate in 1958 and served as a Senator in the 81st General Assembly. In 1962 he was elected to membership in the House of Representatives of the Congress of the United States and he has served continuously in that capacity since that time.

present himself at the Bar of the Senate for induction.[2]

■ We do not hold that he is ineligible to sit in the Senate on or after January 1, 1975; merely that he is ineligible prior to that time and, being ineligible, is not qualified to have his name appear upon the ballot.

We cannot speculate that there will be no special session of the Legislature. The people of this Senatorial District are entitled to representation. His party is entitled to representation.

■ The election of one declared ineligible to office by the Constitution has been uniformly held to be void. State ex rel. Carey v. Bratton, 148 Tenn. 174, 253 S.W. 705 (1923).

This Court is under a sworn duty to protect not only the rights and interests of litigants but also to guard with equal vigilance the interests of the body politic.

■ In summary we hold that the courts have power, jurisdiction and authority to determine the eligibility of a candidate for the State Senate in the General Election, and that prior to the day of the November General Election, the Senate is without jurisdiction. The Senate is the sole and exclusive judge of the qualifications and election of its members, after the particular Senate is constituted. During the term (from election day to election day) of any particular Senate, the courts are wholly without jurisdiction except to the extent necessary to enforce orders and decrees in causes entertained prior to the commencement date of any legislative term. In such cases the Court having taken jurisdiction is not pre-empted by the ensuing legislative term, nor does the Legislature have the power to nullify, abrogate or alter any prior determination made by the courts.

■ We have considered appellee's insistence that this is in effect an election contest and is governed by Sec. 2–1704, Tennessee Code Annotated, which reads as follows:

"Any candidate may contest the primary election of his party for the office for which he was a candidate. To institute a contest he shall, within five (5) days after the certification of results by the county election commission, file a written notice of contest with the state primary board of his party and with all other candidates who might be adversely affected by the contest. In the notice he shall state fully the grounds of the contest. The state primary board shall hear and determine the contest and make the disposition of the contest which justice and fairness require, including setting aside the election if necessary (Acts 1972 (Adj.S.), ch. 740, § 1.)"

This insistence is without merit.

The statute can have no application to the appellant who was not a candidate in the primary.

Victor Ashe stands in this record as the duly selected and certified nominee of his party. No challenge is made of his credentials as the winner of the primary election. This suit only seeks to bring into focus his failure to meet the age criterion established by the Constitution of Tennessee. Only in a broad and generic sense can this be designated an election contest.

We hold that it is not such a contest within the meaning of Sec. 2–1704, T.C.A.

2. The late Rush Holt of West Virginia was elected to the Senate of the United States, for a six-year term beginning January 3, 1935. He did not attain age 30 until June 19, 1935. Thereafter he presented himself at the Bar of the United States Senate and was seated.

which merely provides a procedural vehicle for a candidate in a party primary to contest the results of that primary.

■ We have considered appellee's insistence that appellant did not have standing to bring this suit and find this insistence to be without merit.

This is a suit for a declaratory judgment and injunctive relief. Sec. 1179, Gibson's Suits in Chancery, Fifth Edition, sets out the essentials of such a suit as follows:

> "1. One or more persons, as complainant or complainants, must have a real interest, adverse to another, in a controversy and his or their rights, as complainant or complainants, must be stated.
>
> '2. The controversy must be real and substantial, and not theoretical, and the dispute should be over the legal consequences of known facts rather than over the facts themselves.
>
> '3. The defendant must be a person having a real interest who may oppose the declaration sought.' "

This suit meets these criteria.

By Art. 1, Sec. 17 of the Constitution of Tennessee, the citizens of this state are guaranteed open courts for the redress of injuries; remedies by due course of law and right and justice administered without sale, denial or delay.

We have accorded these rights to Victor H. Ashe and Jack Comer. They are entitled to no more; we cannot give less.

The action of the Chancellor is reversed and this cause is remanded for further action consistent with this opinion, to include the issuance of all extraordinary process necessary to effectuate the holding of the Court.

The costs of this cause, both in the court below and in this court, are taxed against the defendant, Victor H. Ashe.

All concur.