## THE TERRITORY OF OKLAHOMA V. T. M. RICHARDSON, JR.

(Filed Feb. 8, 1900.)

1. PARDON—*Term Defined.* A pardon is an act ˙of grace procceding from the powers entrusted with the execution of the laws, which exempts the individual upon whom it is bestowed from the punishment which the law inflicts for the commission of a crime. It is a remission of guilt, and a declaration of record by the authorized authority. that a particular individual is to be relieved from the legal consequences of a particular crime.

2. SAME—*Power to Grant—Extent of.* The power and authority to grant pardons for offenses against the laws of this Territory is, by the Organic Act, committed to the governor, and is complete in him. The power to grant pardons is exclusive of the judicial and legislative authority. It is conferred by the United States, and it cannot be lessened by any act of the territorial legislature. When a full and absolute pardon is granted to one by the governor of this Territory, it exempts the individual upon whom it is bestowed from the punishment which the law inflicts upon the crime which he ·has committed, and the crime is forgiven and remitted.

3. SAME—*May be Exercised, When.* A pardon extends to every offense known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment.

4. SAME—*Effect of Final.* After a pardon has been granted, it is thenceforward and at all times final, notwithstanding the fact that it may not have been granted in pursuance of the regulations provided for in the statutes of the Territory.

5. SAME—*Power to Grant Not Limited—Bar to Prosecution When Pleaded.* The territorial legislature has no power to impose limitations upon the manner in which the pardoning power shall be used, set up, alleged or called to the notice of the court, as a defense. All that is requisite is .that the' attention of the court shall be called judicially to the fact that a full and absolute pardon has been granted,

and the court before whom the matter is pending will itself determined whether the evidence is sufficient; and when, as in this case, there is no contention on the subject, but the pardon is admitted, it is the duty of the court to discharge the defendant, and dismiss the proceeding against him.

6. SAME—*What Must be Done to Impeach.* In order to impeach a pardon for fraud it must be done in a direct and not in a collateral manner, such as the present proceeding.

7. SAME—*May be Pleaded at Any Time.* The fact that a pardon has been granted is available as a protection from any further proceeding in respect to the crime for which the pardon has been extended, at any time or stage of the proceedings before the execution of the sentence.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, District Judge.*

*Harper S. Cunningham, Attorney General, A. R. Museller, County Attorney* and *S. H. Harris,* for plaintiff in error.

*H. H. Howard, J. L. Pancoast* and *James B Diggs,* for defendant in error.

### STATEMENT OF THE CASE.

On December 16, 1897, the defendant in error was charged by indictment with the offense of receiving a deposit in the First State Bank of Perry, when he knew the bank to be insolvent, and when he was at the time assistant cashier thereof. A demurrer filed by the defendant was overruled, and the plea of not guilty entered.

Thereafter, upon the application of the defendant, a change of venue was granted from Noble to Kay county; consent was given by the defendant to the setting of the

case for trial, and an application made for an order for witnesses to be subpoenaed in his behalf. When the case was called for trial the defendant, without leave of court, and without withdrawing his plea of not guilty, filed a motion to dismiss the indictment, on the ground that a pardon had been granted to him on March 30, 1897, by the secretary of the Territory, then properly acting as governor, in the absence of the governor himself.

Thereafter, on the 28th day of September, 1898, the defendant, by leave of court, filed an amended motion, entitling it "in the nature of a plea in abatement, setting up a pardon," in which he set forth more fully that a free, full, absolute and unconditional pardon had been granted to the defendant upon the date referred to, and made profert of letters patent by which the pardon had been granted, and in which the offense as charged in the indictment was set forth, and for which the pardon recited that it "granted unto the said T. M. Richardson, Jr., a full, complete and absolute pardon for all offenses committed or charged against him, growing out of the management or control of the First State Bank of Perry, between the 11th day of June, 1895, and the 16th day of September, 1895, of which he now stands indicted, or for which he may hereafter be indicted, of any and every nature whatsoever, and hereby remitting and releasing unto the said T. M. Richardson, Jr., all penalties incurred or supposed to be incurred for or on account of the management or control of said bank as aforesaid."

The pardon was executed by the acting governor, under the great seal of the Territory.

Upon the hearing of the motion the plaintiff, by its attorneys, objected to its consideration, for the reasons, (1),

that the defendant had waived the benefits of the pardon by pleading to the merits, and by taking a change of venue and causing the case to be set for trial, and (2) that the motion was in the nature of a special plea, with the general issue before the court, and that the matter set up therein should be tried with the general issue,. and (3) that the pardon was not, in fact, accepted, and had been procured by fraud and misrepresentation, and without compliance with the laws of the Territory with reference to the granting of the same, and (4) that the order should be tried with the general issue, and an opportunity given the plaintiff to show that the attorney general of the Territory had acted on behalf of the defendant in procuring the pardon, and had procured the same by misrepresentation and a concealment of facts.

Time was given to the plaintiff to file affidavits to substantiate the statement of facts made in their objection to the consideration of the motion, to the 4th day of October following, and upon the hearing of the motion, the court having directed the plaintiff to "substantiate the charges made in court against the secretary of the Territory, acting as governor," the counsel for the Territory stated that, for the purposes of that motion, he did not wish to be understood as making any charges or being able to prove any charges.

In passing upon the motion, the court sustained the plea of pardon upon the ground that the pardon upon its face showed that it was duly and regularly issued, and had been duly accepted by the defendant. The action was dismissed, and the defendant discharged. The Territory objected to the proceeding, and exceptions were reserved.

Opinion of the court by

McATEE, J.:  It is contended by the plaintiff in error that the court had no authority to entertain the plea in abatement, because any special plea had been waived by the act of the defendant in pleading not guilty, taking a change of venue, and consenting that the case be set for trial

In support of this contention, the plaintiff in error cites the various sections of the statute which provide for the pleas on behalf of the defendant, and by which the defense of the defendant may be set up, and upon which the indictment must be set aside, if at all, by the court.

Sections 5117, 5118, 5127 and 5133 provide that the only pleading on the part of the defendant is either a demurrer or a plea; that the demurrer and the plea must be put in in open court, either at the time of the arraignment, or at such other time as may be allowed to the defendant for that purpose; that there are three kinds of pleas to an indictment, to-wit: (1) guilty, (2) not guilty, and (3) a former judgment of conviction or acquittal of the offense charged, which may be pleaded either with or without the plea of not guilty; and that all matters of fact tending to establish a defense other than specified in the third subdivision of section 5127 may be given in evidence under the plea of not guilty.

It is contended by the plaintiff in error that the court should not have sustained the motion of the defendant in error to dismiss the cause, since the statute adequately provides for giving in evidence the pardon under the plea of not guilty, and that the motion of the defendant is not provided for in or by the provisions of the statute here enumerated, and is therefore excluded from use in our procedure.

The Organic Act provides by section 2, that:

"The Governor * * may grant pardons for offenses against the laws of said Territory, and reprieves for offenses against the laws of the United States until the decision of the president can be known thereon."

A pardon is an act of grace proceeding from the powers entrusted with the execution of the laws, which exempts the individual upon whom it is bestowed, from the punishment which the law inflicts for the commission of a crime.

This is the definition of pardon as given by Chief Justice Marshall, in *United States v. Wilson*, 7 Peters (U. S.) 150, and it has been followed since that time. (*Ex parte Wells*, 18 How. [U. S.] 307; *People v. Bowen*, 43 Cal. 439.)

The effect of a pardon is included in definitions made by other legal writers, the standard authorities whom we follow. Lord Coke defines a pardon as a "work of mercy, whereby the king, either before or after attainder, sentence or conviction, forgiveth any offense, punishment, execution." * * (3rd Inst. 233.)

And Bishop says that: "Pardon is a remission of guilt." (1 Bish. Crim. Law, sec. 898.)

And a pardon is defined in Wharton's Criminal Law, section 591, as a declaration of record by a sovereign that a particular individual is to be relieved from the legal consequences of a particular crime. (17th Amer. & Eng. Ency. of Law, 317.)

The power and authority to grant pardons for offenses against the laws of the Territory is, by the Organic Act, committed to the governor. It is complete in him. It is so provided by the Organic Act. The power to grant

pardons is exclusive of the judicial and legislative au-
thority. It is conferred by the United States, and it
cannot be lessened by any act of the territorial legisla-
ture. Under the grant in the Organic Act, and the de-
finition herein recited, when a full and absolute pardon is
granted to one by the governor of this Territory, it ex-
empts the individual on whom it is bestowed from the
punishment which the law inflicts upon the crime which
he has committed. The crime is forgiven and remitted,
and the individual is relieved from all of its legal conse-
quences.

If, after the granting of this authority and jurisdic-
tion to the governor by congress, it still remained in the
power to the territorial legislature to prescribe the pro-
visions under which the governor must proceed it would
result that the legislature would have the power to lessen
the facility and freedom with which the pardon might
be granted. The existence of such a power in the legis-
lature is repugnant to the absolute authority in this mat-
ter given to the governor by the Organic Act, by which
the pardoning power is completely and wholly vested in
him. And it has never been understood in any of the ter-
ritories that the territorial legislature had any authority
to prescribe limitations, or to determine in what manner
the individual seeking the pardon must proceed in order
to be entitled to this act of mercy.

The executive authority has not been in any wise con-
trolled by any act of the legislature with reference to this
subject, which could be understood as in any manner
limiting the authority and discretion of the governor
when he saw fit to exercise it, except as the legislative pro-
visions may have been considered as a regulation of the

method of procedure by persons seeking to bring their application for the benefits of the pardoning power before the governor in such a way as to entitle them to be heard.

The power to grant pardons, by the constitution of the United States, sec. 2, art. 2, providing that the "President * * shall have power to grant reprieves and pardons against the laws of the United States, except in case of impeachment," is in terms of identical scope and force within the United States, with the provision of our Organic Act which provides that "The governor * * may grant pardons for offenses against the laws of said Territory."And the reasoning in *Ex parte Garland*, 4 Wall.333, is entirely applicable here. The court there say that, inasmuch as the constitution provides that the President shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment, that the power thus conferred is unlimited; extends to every offense known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment, and that this power of the President is not subject to legislative control, and that congress can neither limit the effect of his pardon nor exclude from its exercise any class of offenders. The benign prerogative of mercy imposed in him cannot be fettered by any legislative restrictions.

The same reasoning is adopted in the territories with reference to the pardoning power of the governor.

It was so held *In re Noore*, 31 Pac. 980, and in *State v. Jenkins*, 54 Pac. 765; in 85 Maine 547; in *Diehl v. Rogers*, 169 Pa. St. 316, and in *Ex parte Reno*, 66 Mo. 225.

The sum of these decisions is that the power to grant pardons is exclusive, and cannot be exercised or controlled by the legislature.

A part of the contention of the plaintiff in error is that the pardon was not procured in pursuance of the regulations therefor, as prescribed in the Statutes of 1893, but it will be seen by the authorities here cited, that since it is admitted that the pardon was granted as averred, and that it was full and absolute, that thenceforward it was final, notwithstanding the fact that it may not have been granted in pursuance of the regulations provided for in the statutes of the Territory.

It also follows from the absolute, unlimited and final character of the governor's act in granting the pardon, and from his complete and exclusive jurisdiction in the matter, that the territorial legislature has no power to impose limitations upon the manner in which it shall be used, set up, alleged or called to the notice of the court as a defense.

All that is requisite is that the attention of the court shall be called to the fact that a full and absolute pardon has been granted, and the court before whom the matter is pending will itself determine whether the evidence is sufficient; and when, as in this case, there is no contention on the subject, but the pardon is admitted, it is the duty of the court to discharge the defendant, and dismiss the proceeding against him, since the pardon is itself an absolute exemption from any further legal proceedings which could tend to harrass the defendant on account of the crime, or alleged crime, which has been the subject of executive clemency in the exercise of the pardoning power.

It was said in Blackstone, that: "The King's charter of pardon must be specifically pleaded, and that at a proper time; for if a man is indicted and has a pardon in his pocket, and afterwards puts himself upon his trial by pleading the general issue, he has waived the benefit of such pardon." But Blackstone himself added immediately thereafter, that: "If a man avails himself thereof, as by course of law he may, a pardon may either be pleaded on arraignment, or in arrest of judgment, or, in the present stage of proceedings, in bar of execution." (Blackstone, vol. 4, p. 401.)

And after making this citation from Blackstone, in *The United States v. Wilson*, 7 Peters 644, Chief Justice Marshall adds that the court, in a case in which the defendant did not avail himself at all of the pardon, says that the matter of pardon, when its benefits are sought, "must be in some manner brought judicially before the court by plea, motion or otherwise." And he adds that: "A court would undoubtedly at this day permit a pardon to be used after the general issue. Still, where the benefit is to be obtained through the agency of the court, it must be brought regularly to the notice of that tribunal," and that "A person may avail himself of a pardon by showing it to the court, even after waiving it by pleading the general issue."

Any other construction would lead to useless and unwarranted delay and expense. When a pardon is shown and admitted, the defendant is entitled to complete exemption from further annoyance, and if the trial court had held otherwise, and had undertaken to further detain the defendant and empanel a jury upon the general issue, the only result which could have followed would

have been that upon the introduction of the pardon in evidence and its examination by the court, and its character ascertained as a full and absolute pardon for the offense in question, that the court should have forthwith discharged the defendant and the jury.

But it is contended by the plaintiff that he would have had a right to attack the pardon for fraud, or to show that it was not accepted. Upon the latter half of the proposition, it is sufficient that the defendant brought the pardon to the notice of the court in his motion to dismiss; and upon the former proposition it must be held that, in order to impeach for fraud, it must be done in a direct proceeding, and not in a collateral proceeding like this. It has been held concerning pardons, that they stand upon the same plane with the government's patent for land, with its patent for an invention, or with its incorporation of a company, or with the record of a judgment; that while fraud may vitiate them, and an action may be brought setting either the deed, patent, incorporation or judgment aside for fraud, it will only be done in a direct proceeding for that purpose.

And it has been said that: "A pardon is granted to one who is certainly guilty, sometimes before but usually after conviction. And the court takes no notice of it unless pleaded, or in some way claimed by the person pardoned; and it is usually granted by the crown or by the executive." (*State v. Blalock*, Phil. L. [N. Car.]242.)

In *Rex v. Haines*, 1 Wils. 214, where a pardon granted after issue joined, but before conviction, was not called to the attention of the court until after conviction, it was nevertheless held to be in time, but the defendant was charged with full payment of costs.

The plea of pardon may be made after conviction, in response to the question whether the accused has anything to say why sentence should not be pronounced. (*Blair v. Com.* 25 Gratt. [Va.] 850.)

A pardon may properly be called to the attention of the appellate court where the case is pending on appeal. (*Com. v. Lockwood,* 109 Mass. 323, 12 Am. Rep. 699.)

And this may be done by suggestion of the state's attorney that the defendant has been pardoned, upon which the appeal will be dismissed. (*State v. White,* 26 Oregon, 605.)

The governor having been vested with the pardoning power, and with exclusive authority to hear and determine, and no limitation being imposed upon him that this benign prerogative of mercy shall not be so treated, and that the suggestion that it may be set aside by a court in a collateral proceeding like this, is not to be thought of for a moment. (*Knapp v. Thomas,* 39 Ohio State, 377.)

The appeal will, therefore, be dismissed, and the judgment of the trial court affirmed.

Hainer, J., who presided in the court below, not sitting; all of the other Justices concurring.