## STATE ex rel. CLOUD v. STATE ELECTION BOARD et al.

No. 25759.   Sept. 25, 1934.

Rehearing Denied Oct. 30, 1934.

C. Dale Wolfe, for relator.

Billingsly & Kennerly, Hill & Hill, and R. J. Roberts, for defendant.

J. Berry King, Atty. Gen., and Randall S. Cobb, Asst. Atty. Gen., for State Election Board.

OSBORN, J. Original action in mandamus by the state on relation of H. G. Cloud, hereinafter referred to as relator, against the State Election Board and V. L. Kiker, hereinafter referred to as respondents. Relator seeks a writ of mandamus against the State Election Board to compel it to issue to him a certificate of nomination for the office of Representative for district No. 1 of Seminole county, Okla.

It appears that six candidates filed for the office of Representative, and at the regular primary held on July 3, 1934, none of the candidates received a majority of all the votes cast, but relator and the respondent, Kiker, were the two candidates receiving the highest number of votes. Their names were placed upon the ballots for the run-off primary held on July 24, 1934, and relator received 2,074 votes and Kiker received 2,255 votes.

Relator contends that said Kiker is ineligible for election to the office of Representative since, on May 21, 1917, in the district court of Seminole county, respondent Kiker pleaded guilty to a charge of embezzlement and was sentenced to a term of three years in the state penitentiary, and, on account of such ineligibility, the votes cast for said Kiker are illegal votes, and that relator, having received a majority of the legal votes cast, is entitled to a certificate of nomination for said office.

Respondent Kiker does not deny the fact that he was adjudged guilty of the offense of embezzlement, but alleges, and it is admitted, that on April 5, 1922, Hon. J. B. A. Robertson, then Governor of the state, granted to him a full and unconditional pardon, and he contends that his constitutional ineligibility was thereby removed.

Our attention is directed to section 30, of article 5, of the Constitution, which provides that "* * * each House shall be the judge of the elections, returns, and qualifications of its own members. * * *" Respondent contends that this provision vests sole jurisdiction in the House of Representatives to determine the issues presented herein, and that this court is without jurisdiction. Section 17, article 5, of the Constitution provides that: "* * * members of the House of Representatives shall be 21 years of age at the time of their election; they shall be qualified electors in their respective counties or districts, and shall reside in their respective counties or districts during their term of office." Special emphasis is laid upon section 18, article 5, of the Constitution, which, in part, provides that, "* * * nor shall any person be eligible to election to the Legislature who has been adjudged guilty of a felony." It is urged that the terms "eligible" and "qualifications" are synonymous, and that it was the intent of the framers of the Constitution that each house of the Legislature should have sole jurisdiction to determine the "eligibility" of candidates for the respective houses, and that such jurisdiction is exclusive.

Relator seeks affirmative relief by having his name placed upon the ballot as the Democratic nominee for the office of Representative. His claim of right is founded upon the ineligibility of his opponent. At this time he does not seek a judicial determination of his election, but seeks the right to become the Democratic nominee for said office. It is argued that section 30, article 5, supra, was placed in the Constitution to preserve the independence of the legislative branch of government and to prevent interference with the Legislature by the courts. The various provisions of the Constitution, however, should be construed together, and if possible should be harmonized. The Legislature is essentially

a lawmaking department. By the Constitution (section 1, article 7), the judicial power of the state is vested in the courts. Section 6, article 2, of the Constitution provides that courts of justice of the state shall be open to every person and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation. If the Legislature is vested with exclusive jurisdiction to determine the right of relator to become the nominee for the office of Representative, then manifestly he is wholly without remedy, for, unless his name is placed upon the ballot, it is obvious that he cannot be elected to said office. A determination of the eligibility of a candidate for such office requires a construction and interpretation of various constitutional provisions. It devolves upon the courts to interpret and construe existing provisions of law. The Constitution provides for the time of legislative sessions, and it must have been contemplated that the Legislature would not be in session at such time as the eligibility or ineligibility of a candidate for such office was in question. We are not here passing upon the election or qualifications of a member of the House of Representatives, and are not concerned with the canvassing of returns. A plain and simple construction of section 30, article 5, forces us to the conclusion that said section has, and can have, no field of operation until after election. We find nothing in the Constitution which precludes this court from passing upon the principal issue involved herein, which is, whether or not a full and unconditional pardon granted by the Chief Executive of the state suffices to remove the ineligibility provided in section 18, article 5, supra.

It is contended by relator that the above is a plain and positive mandate from the people to the effect that no person who has been adjudged guilty of a felony shall, under any circumstances, be eligible to election to the Legislature, and that should the court hold that one who has been pardoned of such offense thereby become eligible to such office, violence is done to said constitutional provision.

It has been said that there is no inherent pardoning power, but such power is derived from the Constitution and statutes. Holliman v. Cole, 168 Okla. 1, 34 P. (2d) 597. There was adopted into our Constitution, however, section 10, article 6, which vests in the Governor power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such limitations and restrictions as he may deem proper, subject to such regulations as may be prescribed by law. Long prior to the adoption of our Constitution, the Supreme Court of the United States adopted the English rule of great antiquity which was followed by our Territorial Supreme Court, defining the pardoning power and the force and effect of an unconditional pardon. Territory v. Richardson, 9 Okla. 579, 60 P. 244; Ex parte Garland, 4 Wall. 333, 18 U. S. (L. Ed.) 366; 20 R. C. L. p. 566, par. 40. The above constitutional provision does not purport to limit or modify in any manner the full force and effect of an unconditional pardon granted by the Chief Executive. Therefore, we must conclude that, with the adoption of the above constitutional provision, the Constitution makers were fully cognizant of the meaning of the language used.

It is a well-established canon of construction of constitutional provisions that every provision should be construed, whenever possible, to give effect to every other provision. People v. Case, 220 Mich. 379, 190 N. W. 289, 27 A. L. R. 686; I Cooley's Constitutional Limitations (8th Ed.) p. 129.

The pardon granted to defendant concludes as follows:

"Now, therefore, I, J. B. A. Robertson, Governor of the state of Oklahoma, by virtue of the authority vested in me by law, do hereby grant unto the said Vernon Kiker a full and free pardon of the said offense, to take effect immediately restoring unto the said Vernon Kiker, a full and free pardon of the said offense, restoring unto him all the rights of citizenship."

In the case of Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 430, 47 L. R. A. (N. S.) 1036, the court said:

"The power to pardon is an executive power expressly vested by the Constitution of the state in the Governor. He does not hold the power simply because he is the Chief Executive but because the sole power to pardon is delegated to his office. Const. art. 6, sec. 10 (159, Williams'). 'As human actions are necessarily imperfect, the pardoning power must be vested somewhere in order to prevent injustice when it is ascertained that an error has been committed.' Bouv. Law. Dic., see 'Pardon'. A full, unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender. It releases the punishment and blots out of existence the guilt

366

so that in the eye of the law the offender is as innocent as if he never committed the offense. It obliterates, in legal contemplation, the offense itself.

"The doctrine of the authorities is that: 'In contemplation of law it so far blots out the offense that afterwards it cannot be imputed to him (the convict) to prevent the assertion of his legal rights. It gives him a new credit and capacity and rehabilitates him to that extent in his former position, and hence its effect is to make the offender a new man.' 4 Bl. Com. 404. In re Garland, 71 U. S. (4 Wall.) 333, 18 L. Ed. 366; Knote v. United States, 95 U. S. 149, 24 L. Ed. 442; Young v. Young, 61 Tex. 191; State v. Page. 60 Kan. 664, 57 P. 514."

The above has been adhered to in Stewart v. State, 11 Okla. Cr. 400, 146 P. 921; Ex parte Jones, 25 Okla. Cr. 347, 220 P. 978; Ex parte Collins, 32 Okla. Cr. 6, 239 P. 693.

In the case of Stevens v. State ex rel. Goldsberry, 111 Okla. 262, 239 P. 450, this court held:

"A full and complete pardon granted after conviction removes all penalties and legal disabilities, and restores the defendant to all his civil rights. 20 R. C. L. 557, section 41."

In the body of the opinion the court said:

"The pardon completely destroys the effect of the judgment in so far as submission to same by the defendant is concerned, and deprives the trial court of any jurisdiction to enforce its judgment. 'Obliterates in legal contemplation the offense itself; and hence its effect is to make the offender a new man.' Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428."

The case of Ex parte Garland, 4 Wall. (71 U. S.) 333, 18 L. Ed. 366, is one of the early cases from the Supreme Court of the United States, which has been cited many times with approval. Therein it is said:

"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

"There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment."

See, also, United States v. Commanding Officer of 78th Division, 252 Fed. 314; United States v. Smith, 17 Fed. (2d) 534; Sanders v. State, 108 Tex. Cr. Rep. 467, 1 S. W. (2d) 901, 57 A. L. R. 440; In re Court of Pardons (N. J.) 129 Atl. 624; Kelley v. State (Ind.) 185 N. E. 453; Ex parte Crisler (Miss.) 132 So. 103; Commonwealth v. Quaranta, 295 Pa. 264, 145 Atl. 89.

The incorporation of the pardoning power into our fundamental law suggests a recognition of the imperfections in our judicial machinery and that occasions may arise when innocent persons would be adjudged guilty. When the mistake is discovered, means are provided not only for a release from incarceration, but for a restoration of all rights and privileges as citizens lost as a consequence thereof.

It is also suggested that a rightful exercise of the pardoning power would result in encouragement to reform. A conviction of a felony in our courts not only creates a stain upon the character, but brands the felon as unworthy to occupy certain positions of trust and responsibility. While this is as it should be, nevertheless, a felon who has paid the price exacted by the law for his transgressions should be given opportunity to prove by years of exemplary living that he has worked out a reformation of his own life, and removed, in some degree, at least, the stain against his character, and to demonstrate that he is worthy of trust.

The record shows that the respondent was convicted and sent to prison from Seminole county. In the same county he received a majority of the votes cast for the office in question over the relator. The public records were on file in said county showing the facts relating to his conviction.

Provision is made by the Constitution to the effect that a convicted felon is ineligible for election as Representative. Provision is also made by the Constitution for the removal of such ineligibility by the grant of a full pardon by the Chief Executive of the state. Such ineligibility of respondent having been removed, relator is without right.

The writ is denied.

RILEY, C. J., CULLISON, V. C. J., and

BAYLESS, BUSBY, and WELCH, JJ., concur.

SWINDALL, J. dissents, ANDREWS and McNEILL, JJ., absent.