9 N.J. Super. 511 (1950)
75 A.2d 636
IN THE MATTER OF THE APPLICATION OF MICHAEL FITZPATRICK FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided September 14, 1950.
*513 Mr. Martin P. Devlin, Jr., for the petitioner.
Mr. Theodore D. Parsons, Attorney General of New Jersey, by Mr. Eugene T. Urbaniak, Deputy Attorney General, for the State.
HUGHES, J.C.C.
On the representation that he is illegally confined in the New Jersey State Prison, petitioner, Fitzpatrick, was granted a writ of habeas corpus under the authority of R.S. 2:82-1 et seq. In the petition for the writ, it was contended that petitioner had been classified as a "third offender," although he had never been indicted and tried as such under the statutes relating to such multiple offenders; that as a result of such classification by the administrative officers at the Prison, he was unlawfully deprived on his sentences of the commutation time for good behavior and performance of assigned labor, established by statute (R.S. 2:103-9; R.S. 30:4-140); and that upon the restoration of such commutation time, he would be entitled in law to immediate release.
By virtue of the provisions of P.L. 1950, c. 315, the basic contention of the petitioner is now academic and by stipulations entered into at the hearing on the writ between the representative of the State and the petitioner, it is clear that there will be (or has already been) restored to the prisoner all such commutation time of which he heretofore was deprived; *514 and that, accordingly, such ground for relief is withdrawn.
The return to the writ predicates the detention of the prisoner from January 23, 1945, to the present, upon two consecutive sentences imposed upon him, the first, in Essex County on January 19, 1945, for a term of not less than 4, nor more than 7 years; the second, in Hudson County on October 19, 1945, for a term of not less than 3, nor more than 5 years, the sentence on the latter term stipulating that it should commence on the expiration of the former.
The prisoner gave evidence on the return of the writ as to his status and his contentions, the latter being clarified by stipulations entered of record under the supervision of the court. As a result thereof, it appears that although his complaint as to the deprivation of such commutation time is now withdrawn by reason of the corrective and retroactive effect of P.L. 1950, c. 315, supra, his claim to immediate release rests on another distinct and fundamental ground. This contention is that upon the expiration of the minimum of his first sentence (as reduced by the work time and commutation time for good behavior, to which he was entitled by virtue of R.S. 30:4-140), he entered upon service of his second term; that he has served the minimum of his second term, as reduced by similar time credits, and that he is, therefore, entitled to immediate release. I think that in order to effect complete justice, and pursuant to the liberal amendment policy of the Rules of court, the petition should be deemed to be amended to include such additional ground.
The State answers in argument that petitioner was never paroled on either of his terms of imprisonment and that, accordingly, he must be considered to be serving the full maximum on his first term, i.e., 7 years, less the commutation and work credits to which he is entitled, conceded to be approximately 330 days for good behavior and 150 days for work assignments performed.
To this the petitioner rejoins by evidence that the administrative officials at the Prison "lumped" his consecutive sentences, *515 that is to say, that they were recorded as a unit and that the administrative record of such was made to reflect a combined minima and maxima so that in total aggregate it determined such sentences to have a minimum of 7 years and a maximum of 12 years. He further contends that this action misled him into the belief that he was ineligible for parole until the expiration of his "minimum," i.e., the combined minima of such sentences; that, being thus lulled, he failed to apply for parole at the expiration of the minimum of his first sentence and that, accordingly, the court must now deem that sentence concluded on the expiration of the minimum thereof. The same general reasoning is applied (in necessary effect to his claim for immediate release) to the second sentence.
There was an admission of some ambiguity in the evidence that petitioner had in fact applied for parole to the old Court of Pardons and that such had been denied, although the date thereof was not shown. As I view the law, however, it seems to me unnecessary to determine this fact by taking additional evidence thereon.
The effect of the evidence and stipulations mentioned moulds a basic issue for resolution. If, as petitioner contends, his sentences concluded on the expiration of the respective minimum terms thereof, he is entitled to immediate release. If they were not so terminated, of course, his detention is not illegal, and this court would have no authority to order his release.
Preliminarily, as concerns the contention of the petitioner that the action of the prison officials in combining the minima and maxima of his sentences for administrative purposes (relevant inter alia to the determination of his eligibility date to apply for parole), it seems to me that he is quite right and that the combining of such sentences for such, or any other purposes, is illegal, unless specifically authorized by statute. It may be noted parenthetically that by P.L. 1950, c. 292, the combining, for purpose of determining parole eligibility, of consecutive sentences imposed at the same time *516 by any court, is now authorized by law, this not applying, however, to the sentences of the petitioner which were imposed at different times and in separate courts, and prior to the effective date of such act.
The illegality of the unauthorized combining of sentences is made obvious by considering the effect thereof. Except by action of the old Court of Pardons, which was responsive to its own rules and regulations, a prisoner sentenced to State Prison generally became eligible for parole at the expiration of his minimum sentence. R.S. 30:4-106.1 et seq. The minimum sentence merely defines the period after which a convict is eligible for parole. If, by failure of application, or for any other reason, he does not secure a parole or pardon, he is not automatically released from prison until the expiration of the maximum term of his sentence, less the uniform commutation time credits to which the law entitles him. By combining the sentences as a matter of prison bookkeeping, the officials caused it to appear of record that at the expiration of his combined minimum terms on both sentences, he became eligible for parole consideration. This was, of course, improper, for it should rather have appeared that he should have been eligible for parole consideration at the expiration of the minimum of his first sentence. If paroled thereon, he would have commenced service of his second sentence, and for the balance of the first sentence maximum would have had the dual status of a parolee on his first sentence and a prisoner serving time on his second. The prison authorities certainly had no authority to grant automatic parole at the expiration of a minimum term. It has never been thought that any authority other than the custodians of the power of parole and pardon could take such action. Even the sentencing court, except to correct an illegal sentence, loses power over the sentence at the expiration of a fixed period for resentence. Much less could another court, or the prison authorities, terminate a sentence upon service of the minimum.
Even though there is no specific showing on the prison record as to which of two sentences the prisoner is serving, *517 an obvious illegal effect is brought about by the combining of the sentences. Although it is implicit in the law that there should be individuation in the granting of paroles (State v. Court of Common Pleas, etc., 1 N.J. 14 (1948)), it is probable that the paroling authority, when the prisoner's case comes before it on the record expiration of the minimum of his last consecutive sentence, applies its parole action not only to that sentence, but also retroactively to the consecutive sentence or sentences, the minimum of which were served first in order of time. The effect of this, of course, is to extend the period of parole supervision, for had parole action been taken contemporaneously with the expiration of the minimum of such sentences, and had parole then been granted on each of such sentences, all or some of the period of time on parole, i.e., the unserved maximum of each such sentence, would be served during the service of the minimum of the next succeeding consecutive sentence and, thus, where the parole action as to each sentence was timely, the terminal period of parole supervision, i.e., the unexpired maximum of the last consecutive sentence, would, of course, be a much shorter period than the remaining combined or "lumped" unexpired maxima of all sentences.
Whatever the intent of the Parole Board may be as to the single and contemporaneous, or multiple and retroactive, effect of the parole action taken on sentences which have been so combined, there is no warrant in law for the actual, even though unintentional, cutting off of a sentence by prison authorities before service of the maximum, unless parole or pardon intervenes to effect such result.
In the instant case, for example, petitioner contends that at the expiration of the minimum of his first sentence, he began service of the second, but it is agreed that he was not paroled at any time on either of these sentences. How, then, could the first sentence have terminated on the expiration of the minimum thereof to accommodate the asserted beginning of service of the second? Had a parole or pardon intervened at that point, it is true that during service of the second sentence *518 petitioner would have had the dual status of a prisoner paroled on his first sentence and a convict serving time on his second. But such was not the case.
As held in the case of Commonwealth ex rel. Lynch v. Ashe, 320 Pa. 341, 182 A. 229 (Sup. Ct. 1936), "Prisoners are not automatically paroled at the expiration of their minimum term. They are merely eligible for parole at that time. The granting of a parole is a matter of grace, and a valid parole can be secured only in the manner provided by law."
It seems clear, therefore, that no authority, except a paroling or pardoning authority, can terminate the running of the maximum term of a sentence imposed under our penal statutes.
Reverting to the prisoner's contention that it was illegal to combine his consecutive sentences, he is undoubtedly correct, and the illegality of this practice was disclosed to the prison administrators by Opinion of the Attorney General of New Jersey, dated February 24, 1950, entered in the record herein. That opinion finds support in Commonwealth ex rel. Lynch v. Ashe, supra, wherein the Supreme Court of Pennsylvania condemned the unauthorized combining of sentences, saying "Even a court has no power to lump two sentences into one (Commonwealth ex rel. Miller v. Ashe, 174 A. 295) but authority to lump such sentences, if such authority is desirable, must be obtained from the Legislature." It is to be presumed that the prison authorities and others whose function it is to compute and determine the eligible dates for parole of prisoners have discontinued the practice of combining such sentences as a matter of record.
However, there is little doubt that the practice existed at the time when this petitioner had reached the minimum of his first sentence and would have been eligible to apply for parole thereon. It may also be assumed for the purpose of argument that he was misled thereby and, thus, failed seasonably to apply for such parole.
The reasoning of his present claim is that since the combining for record purposes of the minima and maxima of his *519 sentences was illegal, and since such administrative lapse led him to serve time which he believed he was serving on the minimum of his second sentence after completion of the minimum on his first (the, at least, psychological result of the illegal combining thereof), that this court should, on some principle of equity, consider that both of such sentences were terminated on service of the minimum term of each, and order his immediate release from further confinement. But this is beyond the power of this court to do. Granted, again for purposes of argument only, that the petitioner has lost a valuable right, i.e., the right seasonably to apply for parole on his first sentence, it is by no means certain that such parole would have been granted. By his application here, he simply asks this court to declare the occurrence of an automatic parole at the minimum of both sentences, and, thus, release him from confinement.
Under the 1844 Constitution, in effect at the time of imposition of petitioner's sentences, and under the present Constitution, distribution of the powers of our State Government has placed the functions of pardon and parole in the executive branch (Const. 1844, art. V, par. 10; Const. 1947, art. V, § 2, pars. 1, 2; R.S. 2:198-1 et seq.; R.S. 30:4-106.1 et seq.; P.L. 1948, c. 84, etc.).
Traditionally, the granting of outright remission of guilt and the effects thereof, i.e., pardon, is the voluntary act of the sovereign, and, thus, an executive function. The concept of parole is more modern and the distinctions between it and pardon are well defined. Pardon is a remission of guilt and a declaration of record by the authorized authority that a particular individual is to be relieved of the legal consequence of a particular crime. Territory v. Richardson, 9 Okla. 579, 60 Pac. 244 (Sup. Ct. 1900). Parole, on the other hand, is born of a broad statutory scheme, which, in the discretion of the paroling authority, permits the conditional release of an offender from a penal or correctional institution after he has served a portion of his sentence, under the continued *520 supervision of the State and under conditions that permit his reincarceration in the event of misbehavior. Properly conceived, parole contains none of the elements of executive clemency, as in the case of pardon. The basic purpose of parole is, or should be, to bridge the gap between the closely ordered life within the prison walls and the freedom of normal community living. The concept of parole recognized in our present Constitution is effectuated by statute. Previously, the power to parole, inter alia, was lodged in the old Court of Pardons (R.S. 2:10-1 et seq.; R.S. 2:198-1 et seq.), and also, in the case of State Prison inmates, in the Board of Managers of such institution (R.S. 30:4-106.1 et seq.). Presently, the function of parole, in the case of State Prison inmates, is in the State Parole Board (R.S. 30:4-123.1 et seq.). Such former custodians of the power of granting parole had exercised it, and the State Parole Board presently functions, within the framework of the executive branch of the government.
This being so, there is no judicial power to grant parole, which in terminal and real effect, is the nature of the relief sought by the petitioner in this proceeding. It may be noted that heretofore parole was customarily sought on the application of the prisoner. Presently, no such application may be made and the release of a prisoner on parole is made solely on the initiative of the State Parole Board (P.L. 1948, c. 84, § 17). Statutory safeguards exist which are designed to require such Board to keep itself informed of the eligible dates for parole of prisoners and to consider the case of each such prisoner for parole when such date is reached (R.S. 30:4-123.1 et seq.).
Except for those consecutive sentences falling within the provisions of P.L. 1950, c. 292, supra, the law requires the Board to consider for parole a prisoner on reaching the expiration of the minimum of the first of several consecutive sentences, although its free discretion within certain basic statutory limits comes into play in determining upon the granting of parole or the withholding thereof.
*521 Accordingly, under the present parole law, and assuming the proper administrative recording of consecutive sentences and the time served thereunder, timely and automatic consideration for parole at the proper date is assured. But conceding, for purpose of argument, that under the previous law and practice the illegal combining of his sentences worked to the disadvantage of the petitioner, this court has no power, for the reasons stated, to remedy the same, for to do so clearly would be in excess of judicial authority.
What has been said above should not be construed as bearing upon the existence or lack of power in the present Parole Board to take under consideration now the righting of any manifest injustices which had been done under the former illegal practice of combining of sentences. Whether, to accomplish such result, the Board has, or wishes to exercise, power to grant parole retroactively as to sentences whose minimum terms expired during the prevalence of said practice, is a question not now before this court.
The writ is discharged and the petitioner remanded to custody.