17 N.J. Super. 99 (1951)
85 A.2d 338
IN THE MATTER OF THE APPLICATION OF GRAFTON MAHONEY FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided December 12, 1951.
*101 Mr. Ivan C. Bash and Mr. Samuel Kagle, of Philadelphia, attorneys for petitioner.
*102 Mr. Theodore D. Parsons, Attorney-General of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General), attorney for the State.
HUGHES, J.C.C.
Grafton Mahoney is presently confined in the New Jersey State Prison, and filed a petition under R.S. 2:82-1, et seq., N.J.S.A., for writ of habeas corpus, alleging his unlawful imprisonment. The writ was issued and hearing was had thereunder, and complete stipulations of fact entered in the record, with the approval of the court.
The facts:  On April 22, 1937, petitioner entered the New Jersey State Prison to serve five consecutive terms of imprisonment imposed upon him in the appropriate court in Essex County. These included four separate sentences, each with a minimum term of three years and a maximum of five years, and a fifth sentence with a minimum term of two years and a maximum of three years. All of these sentences were ordered by the sentencing judge to be served consecutively and not concurrently, and there is no doubt as to the power of such court to so order. State v. Mahaney, 73 N.J.L. 53 (Sup. Ct. 1905); Ex parte DeLuccia, 10 N.J. Super. 374 (Law Div. 1950).
These sentences thus amounted to an aggregate minima of 14 years and an aggregate maxima of 23 years. Upon petitioner entering the New Jersey State Prison, he was informed he was considered as a prisoner having "lumped" or combined minimum sentences of 14 years and such maximum sentences of 23 years, and he would thus be treated, and he actually was treated until recently, as a prisoner serving a single sentence of not less than 14 nor more than 23 years. He was also advised by a book of prison regulations then handed him (which had been marked here in evidence as P-1), that on the basis of a term amounting to 23 years in the maximum, he would be allowed under R.S. 30:4-140, N.J.S.A., the maximum number of credits available under this statute which provides incentive rewards for good conduct, faithful performance of assigned labor, and the like. *103 Granted observance of good conduct and other elements described in this statute on the part of the prisoner, the book advised him of the specific number of days by which his combined sentences would be reduced in the aggregate, amounting to 2,736 days. If his sentences had been treated separately, the allowances against each would have been much less, for short-term prisoners derive from the statute less remission time on the obvious premise that they need less incentive for good conduct.
To understand the complete mechanical basis of this distinction, it is necessary to examine the statute.[1] Aside from their obvious utility, indeed their very necessity, in the maintenance of discipline, such statutes are said to be prompted by the highest motives of humanity, and are generally looked upon with favor both by the state and federal legislatures. Ex parte Anderson, 149 Tex. Cr. R. 139, 192 S.W.2d 280 (Ct. Crim. App. Tex. 1946); 41 Am. Jur., Prisons and Prisoners, § 41.
The first sentence of our New Jersey statute, supra, provides credit allowances which may be regarded as "basic," in the sense that such remission of sentence is fixed, mandatory of allowance in the case of all prisoners regardless of the length *104 of their term of sentence, and withheld, or else forfeited retroactively, only in case of the meriting of punishment by flagrant misconduct or otherwise. On the other hand, the remission of time for uninterrupted good conduct as provided for in the final sentence of the statute is not fixed, being based "* * * On the recommendation of the principal keeper and moral instructor, * * *." Moreover, this type of remission is progressive in that "* * * for each succeeding year of uninterrupted good conduct the remittance shall be progressively increased at the rate of one day per month for that year."
Now, although the latter remissions seem dependent on the exercise of interim judgment of the designated prison officials, the practice referred to, fortified by regulations apparently within the competence of the prison managers (R.S. 30:4-4, N.J.S.A.) contemplated the notification to the prisoner at the very outset of his term of service that such time was allowed him, subject to withdrawal for cause. The validity of this procedure (obviously dictated by necessary practical reasons) is not presently before me, for concededly this petitioner has merited no forfeitures.[2]
Under this statute, therefore, a prisoner having a five-year maximum was thus advised that such allowances applicable to his term amounted to 390 days; that on a three-year maximum term there was similarly allowed a total of 228 days. In the case of this petitioner, these allowances, separately applied to each sentence, would have amounted to a total of 1,788 days. However, as stated, the petitioner was advised that on the combined maxima of all of his sentences he would be allowed 2,736 days, as though he were serving a single sentence of such maximum.
If entitled to the latter and greater remission, his term of service has expired, and he is entitled to immediate release. *105 Based on the former allowance, i.e., a total of 1,788 days, however, the maximum of his sentences, or the final one of them, has not expired, and he is properly held further in confinement.
In 1950, the State of New Jersey, by the office of the Attorney-General, advised the prison authorities that the practice of combining or "lumping" sentences was illegal, and later the Law Division of the Mercer County Court decided that such practice was indeed unjustified by law, and was a nullity. Ex parte Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950). On the authority of such decision, the administrative officials of the prison have re-shaped the records of each prisoner serving consecutive sentences, causing these records now to show the true condition of such sentences, ab initio, i.e., as described in the Fitzpatrick decision, namely, that the maximum of each such sentence was served (or would have to be served) separately, less commutation credits available by force of the aforesaid statute. Applying this corrected procedure, it appears now that petitioner has served the maximum of each of his first four sentences, and is now serving time against the final sentence of not less than two nor more than three years. The tentative expiration date of such sentence is June 14, 1953, less work time which the prisoner is permitted to earn under R.S. 30:4-92, N.J.S.A., in the meanwhile.
This petitioner urges that the carrying of the illegal practice of "lumping" or combining consecutive sentences into a standardized and long-established procedure of calculating commutation time credits under R.S. 30:4-140, N.J.S.A., supra, constituted an equitable relationship of sorts between the prisoner and the State, on which the State of New Jersey and its prison authorities should not now be permitted to renege.
I do not see how this argument can prevail. There is no authority in the courts, nor in the State Prison authorities as such, to parole prisoners, that function being reposed exclusively in the New Jersey State Board of Parole, by the *106 Constitution and laws of this State. Unless parole intervenes, a prisoner is bound to serve the maximum term of his sentence, less the credits provided for in R.S. 30:4-140, N.J.S.A., supra, and R.S. 30:4-92, N.J.S.A., supra. Moreover, he must serve one maximum sentence after the previous maximum sentence has been completed. Ex parte Fitzpatrick, supra. Even the release of an inmate by error, or intentionally, short of service of this maximum term, by the prison authorities, is ineffectual in law. Ex parte Damato, 11 N.J. Super. 576 (Cty. Ct. 1951). Departmental or administrative construction of a statute, even though of long standing, and while entitled to respect in cases of ambiguity or of reenactment of a statute, is not binding upon the courts, and the latter must override the same where plainly erroneous. State Board of Administration v. Jones, 212 Ala. 380, 102 So. 626 (Sup. Ct. Ala. 1924); Biddle v. C.I.R., 86 Fed.2d 718 (C.C.A. 2, 1936), affirmed 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431 (U.S. Sup. Ct. 1938). Such was the effect of the Fitzpatrick decision, supra.
Hence this ground advanced by petitioner to justify his release, namely, that there is a moral obligation arising from the standardized procedure as to these "accelerated time credits," as altered to his disadvantage by the latter decision, seems to me to be baseless and is discarded as a basis for discharge under the writ. However, in the Fitzpatrick case, supra, this court concluded its opinion with the perhaps gratuitous observation that such opinion need not be regarded as a bar to the taking of steps by the New Jersey State Board of Parole to rectify, in its complete discretion, any "manifest injustices" brought about by the long-continued and illegal combining of consecutive sentences. (In that case, Fitzpatrick had failed to apply for parole consideration, as his respective eligibility dates were reached on his various consecutive sentences, plainly because of the erroneous combining of such sentences.) Prompted by that decision, such board did promulgate a special rule to adjust such inequities. (Stipulation dated October 29, 1951, and filed herein.) Similarly, *107 the Legislature enacted a statute, prospective in its terms, to permit the combining for parole eligibility purposes of certain types of consecutive sentences. L. 1950, c. 292. Neither the rule mentioned, nor the latter statute, however, avail the present petitioner.
This failure of relief from the remedial rule promulgated by the Parole Board, precipitates the second substantial ground advanced by petitioner for his release.
It is stipulated that the Parole Board has denied petitioner consideration for parole, he being a fourth offender within the meaning of the present parole law, R.S. 30:4-123.12, N.J.S.A., and its predecessor statute, R.S. 30:4-106.2, N.J.S.A. (repealed L. 1948, c. 84, p. 492, § 38), both of which statutes denied parole to such recidivists, providing that they must serve the full maximum term of their sentence. It appears equally certain under existing law, that the Parole Board would be unable (even to remedy a possible injustice) to extend the benefit of parole to such a fourth offender, even under the extraordinary power which it has to deal with particular cases. R.S. 30:4-123.6, N.J.S.A. DeSanto v. New Jersey State Parole Board, 17 N.J. Super. 44 (App. Div. 1951).
Although a fourth offender, this petitioner was not indicted, tried nor convicted as such under the Habitual Criminal Act, R.S. 2:103-10, N.J.S.A. (amended L. 1940, c. 219, p. 889, § 3), or otherwise. He thus contends that his mere administrative classification as such fourth offender, the refusal of the Parole Board to consider him for parole for such reason, and the provision of the mentioned parole statutes which constrains such action, are alike unconstitutional and void as depriving him of due process to which he is entitled under the Fourteenth Amendment to the Constitution of the United States. State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947); In re Breslin, 9 N.J. Super. 356 (Cty. Ct. 1950); State v. Cubbler, 4 N.J. Super. 297 (App. Div. 1949); State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950).
By this reasoning, since this writ seeks his immediate *108 release, he must be understood as contending that on such ground this court should declare the occurrence of an automatic parole to accommodate such release. Without regard to the validity of the constitutional point urged, this issue must go against petitioner for at least three substantial reasons:
(1) The courts have no authority to grant parole, nor to declare the occurrence of an automatic parole, even in the face of a wrongful denial of parole consideration. Parole power is, as stated, confided exclusively to the State Parole Board (Ex parte Fitzpatrick, supra), and, in the sense of executive commutation, sometimes spoken of as parole, In re New Jersey Court of Pardons, 97 N.J. Eq. 555 (Advisory Opinion of Chancellor Walker, as a member of the former Court of Pardons, 1925), in the Governor. Const. 1947, art. V, sec. II; R.S. 2:196A-1, N.J.S.A.; Ex parte Kneipher, 12 N.J. Super. 407 (Cty. Ct. 1951).
(2) The Mercer County Court has no injunctive power by way of a proceeding in lieu of the former prerogative writ of mandamus over the action of the Parole Board which would enable this court, as a step in exerting such mandatory order on that board, to determine the constitutional validity of these parole law sanctions against fourth offenders. Actions in lieu of the former prerogative writs lie in the New Jersey Superior Court, Law Division. Rule 3:81-1.
(3) The Mercer County Court has no appellate or review jurisdiction over the final decision or action of an administrative agency of the State such as the Parole Board. Such jurisdiction exists in the New Jersey Superior Court, Appellate Division. Rule 3:81-8.
There is thus no jurisdictional basis on which this court could grant relief to the petitioner on this phase of his claim.
Upon the whole case, it seems to me apparent that the petitioner is not entitled to immediate release, and I, therefore, discharge the writ, remanding the petitioner to custody.
NOTES
[1] R.S. 30:4-140, N.J.S.A. Deductions for good behavior; credit for past good conduct.

For every month of faithful performance of assigned labor by any convict committed to the state prison there shall be remitted to him from the maximum and minimum term of his sentence two days, and in addition, for every month of continuous orderly deportment, two days, and for every month of manifest effort of self-improvement and control, two days. In any month in which a convict shall have merited and received punishment no remission of sentence shall be made, and in case of any flagrant misconduct the board of managers may declare a forfeiture of the time previously remitted, either in whole or in part, as to them shall seem just. On the recommendation of the principal keeper and moral instructor, there shall be remitted two additional days per month to every convict who for twelve months preceding shall have merited the same by continuous good conduct, and for each succeeding year of uninterrupted good conduct the remittance shall be progressively increased at the rate of one day per month for that year.
[2] Stipulation approved November 8, 1951, and filed.

"Petitioner has a good institutional record during said period of servitude and he has never been demerited for good behavior time, for bad conduct or other disciplinary infractions."