PRACTICE OF MEDICINE — PARDONED FELONS A person who receives a pardon for a felony conviction may not take the regular examination for licensure to practice medicine in Oklahoma, pursuant to 59 O.S. 493 [59-493] (1971). The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: May a person who receives a pardon for a felony conviction take the regular examination for a licensure to practice medicine in Oklahoma pursuant to 59 O.S. 493? Title 59 O.S. 493 [59-493] (1971), states: "(a) The State Board of Medical Examiners shall admit any applicant to the regular examination for licensure to practice medicine and surgery within the meaning of this act, who makes application therefor verified by oath upon forms provided by said Board, and who shall accompany the application with the fee of Twenty-Five Dollars ($25.00); provided, that an applicant, to be eligible for examination, must present satisfactory evidence of identification; that he is of good moral character and is not addicted to habitual intemperance or the habitual use of habit-forming drugs; that he has not been convicted of a felony or a crime involving moral turpitude; that he has never been guilty of unprofessional conduct as hereinafter defined; that his medical license has never been revoked within any other state for cause, and that he is not suffering with active pulmonary tuberculosis or a draining tubercular lesion or venereal disease." (Emphasis added) It is clear from a plain reading of 59 O.S. 493 [59-493] (1971), that a person convicted of a felony is prohibited from taking the examination for licensure to practice medicine in Oklahoma. Accordingly, in order to answer your question, we must examine the nature and effect of a pardon in order to ascertain whether or not a pardoned felon is eligible to take the examination. Article VI, Section 10 of the Oklahoma Constitution, provides in pertinent part as follows: "The Governor shall have the power to grant, after conviction and after favorable recommendation by a majority vote of the said Board, commutations, pardons and paroles . . ." Title 57 O.S. 332 [57-332] (1971), provides in pertinent part: "The Governor shall have power to grant, after convictions, reprieves, commutations, paroles and pardons . . ." The Oklahoma Supreme Court in Cloud v. Election Board of State of Oklahoma, 169 Okl. 363, 36 P.2d 20, 94 A.L.R. 1007 (1934) held that a full and unconditional pardon after conviction reaches both punishment prescribed for the offense and the guilt of the offender. It releases punishment, and, in legal contemplation, obliterates the offense. In Cloud, supra, the court determined that a person who has been convicted of a felony and thereafter receives a full and unconditional pardon from the Governor is eligible for election to the legislature. It should be noted here that election to public office is a "civil right", the import of which will be discussed below. The Supreme Court in Stone v. Oklahoma Real Estate Commission, 369 P.2d 642
(1962), cited 58 Am.Jur. Witnesses, 743, P. 402, and 67 C.J.S. Pardons, 11, P. 576, and quotes from the last citation: "'It has been stated that the effect of a full pardon is to make the offender a new man, and that a full pardon blots out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. However, these statements, characterized as generalizations, have not been universally accepted, recognized, or approved. Moreover, a pardon does not so operate for all purposes, whether the pardon is, or is not, based on the innocence of the prisoner; since as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime, and the conviction thereof; according to the judicial decisions on the question it does not wash out the moral stain; as has been tersely said it involves forgiveness and not forgetfulness."' The Court of Criminal Appeals in Kellogg v. State, 504 P.2d 440 (1972), stated the rule regarding pardons: "As to the effect of a pardon, it is true in some jurisdictions that a pardon 'completely frees the offender from the control of the state and relieves him of all legal disabilities resulting from his conviction.' Taran v. United States, 266 F.2d 561, 566
(8th Cir. 1959). State v. Meyer, 228 Minn. 286,37 N.W.2d 3, 13. Although Oklahoma may have once followed such a view, the present position in this jurisdiction is that a conviction 'is not wiped out by a pardon, as the pardon by the executive power does not blot out the solemn act of the judicial branch of the government.' Thus a pardoned felony conviction may be used to increase punishment on a subsequent conviction under the habitual criminal statute, 21 O.S. 1971 51 [21-51]. Scott v. Raines, Okl. Cr., 373 P.2d 267
(1962). This view, that a pardoned prior conviction may be used for purposes of enhancing punishment on a subsequent conviction, appears to be accepted in a majority of jurisdictions." It is generally conceded that a pardon granted one convicted of a crime does not blot out his guilt or the fact of his conviction. (Kellogg v. State, supra.) If the effect of a pardon were to be construed as the expungement of the conviction itself then it would be an impermissible executive encroachment into the judicial branch of government. A pardon involves forgiveness, not forgetfulness; the very acceptance of a pardon is an implied acknowledgment of guilt. Most jurisdictions have accepted the doctrine that the relief granted by a pardon is prospective and not retrospective. A pardon has no retroactive effect upon the judgment of conviction which remains unreversed and is not set aside. It merely relieves the offender of all enforced penalties annexed to the conviction and is granted as a matter of grace, and not of right. (Territory v. Richardson, 9 Okl. 579,60 P. 244, 49 L.R.A. 440.) It removes any disabilities of further punishment and reinstates all of the individual's civil liberties lost as a result of the conviction (Stephens v. State, ex rel. Goldsberry, 111 Okl. 262,239 P. 450). These are generally stated to be the right to hold office, to vote, to serve on a jury, and to be a witness. (Hence the holding in Cloud, supra.) A pardon does not restore offices forfeited, nor property or interests vested in others in consequence of the conviction. It does not vest the one pardoned with any extraordinary right to practice any of those professions which, because of their peculiar relation to the public, require that those holding or applying for licenses must have the important qualifications of good character; for, if ineligibility to take an examination for licensure could be said to be a portion of the penalty provided by law upon conviction of a felony, then, and only then, could it reasonably be argued that the pardon which releases an applicant from the penalty would restore the eligibility to take the examination. State v. Hazzard,247 P. 957, 47 A.L.R. 538. A pardon is clearly distinguishable from a situation in which an individual is granted a new trial based upon the discovery of newly found evidence and subsequently acquitted. The individual in such a case is completely exonerated and no moral stain remains to cast a shadow upon his character. A pardon will not wipe out the fact that by reason of the act committed, the felon was put in a class regarded by the State as being unfit to practice medicine. A citizen's right to pursue a profession such as that of a physician must yield to the state's authority in exercise of its sovereign duty to prescribe such restrictions and regulations as will fully protect its citizens and ensure that members of the profession meet the highest possible standards of trust and integrity. Page v. Watson, 140 Fla. 536,126 A.L.R. 249, 192 So. 205 (1938). In Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002, the United States Supreme Court held that: (1) a legislature, by statutory definition, may require certain qualifications of applicants before they may be permitted to practice medicine and such requirements are a proper exercise of the State's police power; (2) a state may require good character as a qualification and may rightfully determine what factors shall be considered as evidence of that character; (3) the legislature may permissibly indicate that one convicted of a crime cannot practice medicine. In reaching its decision in Nawker, supra, the Court cited numerous cases from various state and federal jurisdictions. The thought which runs through these cases and others of similar import which might be cited is that such legislation is not to be regarded as a mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and the position to be filled and naming what is deemed to be, and what is, in fact, appropriate evidence of such qualifications. The pardon, when granted, unquestionably restores the convicted person to the rights of his previous citizenship, but it appears that is all it can do. A pardon does not change the past and cannot annihilate the established fact that the party was guilty of the offense. A pardon does not rehabilitate the character of the applicant. Furthermore, it should be noted that had the Legislature intended that those receiving a pardon for a conviction be eligible to take the regular examination for licensure to practice medicine and surgery it would have so indicated within the statute. Furthermore, the language of the statute is quite clear. It is mandatory that the applicant show that he has not been convicted of a felony. It should also be noted that there is no provision in the statutes whereby the State Board of Medical Examiners may exercise any discretionary authority in determining whether the applicant, by exemplary good conduct subsequent to the conviction, has shown himself to have been reformed and rehabilitated so that he has attained a good moral character. Since no discretion was given to the Board of Medical Examiners, and since the statute itself does not make any exceptions for convicted felons who have received pardons, the answer to your question must, of necessity, be dependent upon the definition of the nature and effect of a pardon, as discussed above. It is, therefore, the opinion of the Attorney General that your question be answered in the following manner: A person who receives a pardon for a felony conviction may not take the regular examination for licensure to practice medicine in Oklahoma, pursuant to 59 O.S. 493 [59-493] (1971). (AMALIJA J. HODGINS) (ksg)